## Wesley, Appellant, *v.* Sulzer.

*Deeds—Building restriction—Covenant.*

Where a restriction in a deed forbids the erection of a building exceeding nine feet in height "on the rear end of a lot of ground," described in the deed, the owner of the land may be restrained by injunction where he admits that he proposes to erect a brick factory five stories high, which will occupy the entire space of the lot in question and other adjoining lots owned by him, up to and on the rear line of such lots.  In view of the announced intention of the owner the words "rear end of the lot," are not indefinite.

Argued Jan. 12, 1900.  Appeal, No. 300, Jan. T., 1908, by plaintiff, from decree of C. P. No. 2, Phila. Co., March T., 1908, No. 2,253, dismissing bill in equity in case of John S. Wesley v. Gustavus W. F. Sulzer.  Before MITCHELL, C. J., FELL, BROWN, MESTREZAT, ELKIN and STEWART, JJ.  Reversed.

Bill in equity for an injunction.  Before BARRATT, J.
The facts are stated in the opinion of the Supreme Court.

*Error assigned* was the decree of the court.

*Charles S. Wesley*, of *Wesley & Tustin*, for appellant.—
Whether the restriction imposed by these covenants was im-

posed in favor of a certain dominant tenement as against a certain servient tenement or whether the covenants were merely a personal contract for the benefit of the vendor or his grantee is to be determined generally by a fair interpretation of the grant creating it, aided, if necessary, by reference to the situation of the property and the surrounding circumstances: Landell v. Hamilton, 175 Pa. 327; Mann v. Stevens, 15 Sims. 377; Patching v. Dubbins, 1 Kay, 1; McLean v. McKay, L. R. 5 Privy Council App. 327; Child v. Douglas, 1 Kay, 560; 2 Jur. (N. S.) 950; Coughlin v. Barker, 46 Mo. App. 54.

It has been held in numerous cases that the vendor cannot in any wise affect the vested right to enjoy the covenant. This was decided in Coughlin v. Barker, 46 Mo. App. 54; Watertown v. Cowen, 4 Paige, 510; Child v. Douglas, 2 Jur. (N. S.) 950; Western v. MacDermot, L. R. 1 Equity, 499; Landell v. Hamilton, 177 Pa. 23; Allen v. Hamilton, 177 Pa. 26.

We contend that the covenant in question operates substantially for the benefit of the complainant and his adjoining neighbors in the way of securing light and air to the premises. A mere change in the circumstances and conditions of the neighborhood, and in the character and uses of the properties involved, are matters properly for the serious consideration of a chancellor only when the appellant is guilty of laches.

Where a writing is ambiguous, the court, in order to determine its meaning, will consider all the facts and circumstances attending its execution, and among the circumstances so considered are the nature and situation of the subject-matter and the apparent purpose of making the instrument the contract in question; Jackson v. Marsh, 6 Cow. (N. Y.) 281; Lycoming Mut. Ins. Co. v. Sailer, 67 Pa. 108; McCullough v. Wainwright, 14 Pa. 171; Coleman v. Grubb, 23 Pa. 393; Matchette v. Colburn, 166 Pa. 265; People's Nat. Gas Co. v. Wire Co., 155 Pa. 22.

*John G. Johnson,*. with him *James Wilson Bayard,* for appellee.—It is well settled in this commonwealth that where a restriction or other agreement affecting real estate is not definite, it cannot be enforced. We need refer only to two cases:

Stambaugh v. Hollabaugh, 10 S. & R. 357; Meigs v. Lewis, 164 Pa. 597.


OPINION BY MR. JUSTICE BROWN, April 12, 1909:

In 1829 Frederick and Charles Graff were the owners of a piece of land situated on the west side of North Eleventh street, in the city of Philadelphia, extending from a point 121 feet south of Vine street southwardly 218 feet and thence westwardly 183 feet to Madison street, bounded on the north by Graff, now Winter, street and on the south by Branch alley. On this lot of ground there had been laid out, parallel to Eleventh street, ninety-six feet westwardly from it, an alley twenty feet wide, called Brigg street, now known as Jessup street. Rows of residences were erected on Madison street and Eleventh street. The Graffs conveyed their land to various parties, subjecting each lot sold to certain restrictions in favor of the remaining lots on Madison street and Eleventh street. These restrictions were substantially the same in each grant. That portion of the Graff land facing on Eleventh street is now composed of premises Nos. 232 to 254, inclusive. On May 1, 1829, by a deed duly executed and recorded, the Graffs conveyed to Eli B. Fourestier, the appellant's predecessor in title, the premises No. 232 North Eleventh street. In the conveyance it was "understood, conditioned and agreed to by and between the parties" that the said grantee, "his heirs and assigns, shall and will not at any time hereafter erect or build or permit or suffer to be erected or built on the rear end of the lot of ground above described and granted any building or part of a building exceeding nine feet in height, and also that they, the said Frederick Graff and Charles Graff, and their respective heirs and assigns, shall not nor will not at any time hereafter erect or build or permit or suffer to be erected or built on the rear end of their remaining lots of ground on Eleventh street or on the rear ends of their several lots of ground on the east side of the said Madison avenue any building or part of a building exceeding nine feet in height as aforesaid." The appellant acquired title to his property by deed dated November 13, 1897. In 1829 and 1831 the Graffs con-

veyed to the appellee's predecessors in title premises Nos. 252 and 254 North Eleventh street, the conveyances containing the same restriction as to the erection of any building or part of a building on the rear end of the lots exceeding nine feet in height and covenants on the part of the grantors that they would not at any time erect or build, or permit or suffer to be erected or built, on the rear end of the remaining lots owned by them any building or part of a building exceeding nine feet in height. The appellee acquired his title by deed dated July 17, 1906. Under condemnation proceedings all of the lots of ground fronting on Madison street, together with the buildings erected thereon, have become the property of the Philadelphia & Reading Terminal Railroad Company and there has been erected thereon a solid elevated structure for the support of its railroad. That portion of the premises formerly owned by the Graffs fronting on Madison street is, therefore, not to be taken into consideration in determining the rights of the appellant. On March 28, 1908, this bill was filed, averring that the appellee, the owner of premises Nos. 252 and 254 North Eleventh street, was about to erect a five-storied brick factory for the manufacture of gas and electric fixtures, the said building to cover the entire lots now owned by him, and an injunction was prayed for to restrain such erection as being in violation of the building restrictions in the conveyances from the Graffs. Under the undisputed facts of the case the court below refused the injunction and dismissed the bill, mainly on the ground of the indefiniteness of the restriction, saying as to this: "There is nothing in the restriction indicating or in any way defining what is meant by the 'rear end' of the several lots. Is the 'rear end' one foot, or twenty feet, or fifty feet in depth from the alley? Is the 'rear end' of any different depth on the Madison street houses where the lots are only sixty-seven feet in depth? There is nothing in the terms of the restrictions which will enable a chancellor to declare to what point a building more than nine feet in height can be extended."

Other reasons given for dismissing the bill are that for more than twenty-one years, on some of the lots north of complain-

ant's premises, back buildings have stood of a greater height than nine feet, extending to from ten to twenty-five feet from the rear end of the lots; that when the complainant bought in 1897 he was bound to take notice of the existence of these back buildings which might be in violation of the restrictions; that his premises are more than 150 feet away from respondent's, and he has not shown he will suffer any special damages by reason of the erection of any building on respondent's premises; that the neighborhood is entirely changed, and, from being one of residences, for which abundance of light and air were of importance, it has become a business one, where use of all the ground for business purposes is the most beneficial use to which the premises of the several owners can be put. But these reasons are not to avail the appellee if what he now proposes to do is an unequivocal violation of a building restriction placed upon his premises for the benefit of every lot owner south of him, who, with him, traces title to the Graffs.

Whether the words "the rear end of the lot" are too vague and indefinite to restrain the erection of a building some feet distant from the western line of appellee's premises is not the question now before us. We are not now to determine what is embraced in the rear end of the appellee's lots, or upon what parts of them he may put up buildings of a greater height than nine feet. What he admits that he proposes to do is to erect a brick factory, five stories high, for the manufacture of gas and electric fixtures, which shall occupy the entire space of the lots now owned by him, thirty-eight feet on Eleventh street, thirty-eight feet on Brigg street and ninety-six feet in depth on Graff street. That this is a violation of the building restriction placed upon his premises, and of the covenants of his grantors, cannot be questioned. When he builds up to and on the western or rear line of his lots, he is clearly doing that which is forbidden in his title, and in the face of what he would do the words "rear end of the lot" are not indefinite. The complainant's property is still a residence, occupied by a tenant, for the benefit of which the building restriction was placed on each lot sold by the Graffs, and it is not to be utterly disregarded by the appellee without the consent of the appellant.

The decree of the court below is reversed, the bill is reinstated and it is now ordered, adjudged and decreed that the appellee be perpetually restrained from erecting the building described in the fifth paragraph of appellant's bill, the costs below and on this appeal to be paid by the appellee.