## Harry I. Meigs et al. and Arthur V. Meigs and William M. Meigs, Trustees under the Will of John Forsyth Meigs, deceased, for Ann Ingersoll Meigs, v. William Milligan, Appellant.

*Deeds—Building restriction—Bath house.*

An owner of two adjoining lots executed a deed for one of the lots, and the grantee in the deed covenanted for himself, his heirs and assigns not at any time or times thereafter to "erect or put up or cause or suffer to be erected or put up any building or part of a building or other obstruction except a bath house and privy and walls or fences not exceeding eight feet in height from the level of the ground," on the lot further south than fifty-nine feet from the original line of a street mentioned. Many years afterwards the grantee's successor in title began to construct a bath house jutting out from the rear wall of his house at or near the level of the second story, and extending up over his own lot more than nine feet above said level. This structure, nearly nine feet deep, six feet wide, and over nine feet high was more than eight feet above the level of the ground, and more than fifty-nine feet from the original south line of Walnut street. The owner claimed that this structure was not within the inhibition of the building restriction above quoted, because "a bath house" was one of the structures excepted from its operation, and the qualifying words "not exceeding eight feet in height," etc., applied only to the inclosing "walls or fences," and not to either of the other structures—"bath house and privy"—specified in the same exception. *Held*, that the owner of the adjoining lot was entitled to an injunction, inasmuch as the purpose of the parties to the original deed was to create an easement of light and air in favor of his lot.

Argued Jan. 17, 1896.    Appeal, No. 173, July T., 1895, by defendant, from decree of C. P. No. 4, Philadelphia County, June T., 1894, No. 1024, on bill in equity. Before STERRETT, C. J., GREEN, WILLIAMS, McCOLLUM, MITCHELL, DEAN and FELL, JJ. Affirmed.

Bill in equity for an injunction to enforce a building restriction. Before ARNOLD, J.

It was agreed that the following statement of facts should be filed of record in this case, to have the same force and effect as if duly proved and found according to equity practice:

1. The plaintiffs are the owners in fee simple of premises No. 1208 Walnut street, as set forth in paragraph 1 of their bill.

2. The defendant, William Milligan, is the owner by deed dated July 10, 1894, of the house and lot (No. 1210 Walnut street) lying immediately to the west of the house and lot owned by plaintiffs.

3. In the year 1828 Samuel Mifflin was the owner of the lots which are now Nos. 1210 and 1212 Walnut street, and his wife, Elizabeth Mifflin, was the equitable owner of the lot which is now No. 1208 Walnut street. In that year the said Samuel Mifflin and wife conveyed to James Cooper the lots which are now Nos. 1210 and 1212 Walnut street, by deed duly recorded, which recited the premises conveyed as being bounded on the east by ground of Samuel Mifflin, and contained the following conditions : " To have and to hold the aforementioned and described premises unto the said James Cooper, his heirs and assigns, under the condition that no building or part of a building other than steps, cellar doors, eaves, cornices, etc. (as specified in a certain indenture recorded in deed-book M. R., No. 13, page 491, etc.) shall be erected on said lot within three feet of the line of the said Walnut street, and under the condition also that no building or part of a building, or other obstruction (except a bath house and privy and walls or fences not exceeding eight feet in height from the level of the ground), shall be built or erected on the easternmost twenty-one feet of the said hereby granted lot, further south than fifty-nine feet from the original line of the said Walnut street."

Said easternmost twenty-one feet composed the lot which is now No. 1210 Walnut street and is owned by defendant under the said deed of Samuel Mifflin and wife, by virtue of several mesne conveyances, all of which recite the above set forth condition and convey the premises under and subject thereto. The plaintiffs are not the heirs of Samuel Mifflin.

4. On May 30, 1850, Charles Augustus Davis, trustee (under a deed of Charles Bird and Rebecca his wife, dated May 15, 1824) of premises now No. 1208 Walnut street, for the sole and separate use of Elizabeth Mifflin, wife of Samuel Mifflin, and Elizabeth Mifflin widow and relict of Samuel Mifflin, conveyed the said premises No. 1208 Walnut street to Charles D. Meigs; and on March 29, 1854, Cecilia Carpentier conveyed the premises now No. 1210 Walnut street to the said Charles D. Meigs by deed duly recorded, which recited the condition

above set forth in paragraph 3. On July 1, 1854, Charles D. Meigs, being then the owner of Nos. 1208 and 1210 Walnut street, conveyed No. 1210 Walnut street to John Forsyth Meigs in fee by deed duly recorded, which recited the condition above set forth in paragraph 3 and contained the following covenant: " And the said John Forsyth Meigs doth hereby for himself, his heirs and assigns, covenant, promise and agree to and with the said Charles D. Meigs, his heirs and assigns, owners of the messuage and lot of ground adjoining the above-described and granted lot on the east, that he, the said John Forsyth Meigs, his heirs and assigns, shall not and will not, at any time or times hereafter, erect or put up or cause or suffer to be erected or put up any buildings or part of a building or other obstruction except a bath house and privy and walls or fences not exceeding eight feet in height from the level of the ground, on the said above described and granted lot of ground further south than fifty-nine feet from the original line of the said Walnut street."

On August 5, 1865, Charles D. Meigs conveyed No. 1208 Walnut street to John Forsyth Meigs by deed duly recorded, under and through which the plaintiffs own that lot.

And on the same date (August 5, 1865), John Forsyth Meigs conveyed No. 1210 Walnut street to Charles D. Meigs by deed duly recorded, under and through which the defendant owns that lot. This deed and all the subsequent conveyances under which the defendant derives title recite at length the conditions in the deed of 1828 (quoted above in paragraph 3), and also the covenant of John Forsyth Meigs (immediately above set forth), and all contain a recital immediately after the clause of habendum et tenendum, that they are made " under and subject to the above-mentioned conditions as the same are above particularly mentioned."

5. In the year 1828 bath houses or bath rooms were by no means general in houses in Philadelphia; some of those that existed were built in a structure on the ground floor behind the body of the house. In 1854 bath houses in Philadelphia were generally built in and from the second story of dwellings and projected from the rear part thereof.

6. At no time prior to defendant's purchase had any structure been erected upon lot No. 1210 Walnut street more than

eight feet in height from the level of the ground south of fifty-nine feet from the original line of Walnut street. The only structures of any kind south of the said fifty-nine feet line were walls or fences not exceeding eight feet in height from the ground and a privy in the rear, also not exceeding eight feet in height from the ground, save for a few inches at the top of the pitch of the roof thereof, where it is eight feet two inches, but of this plaintiffs had no actual knowledge, though a measurement thereof would have disclosed the fact. It has existed some years. Early in August of this year defendant began to build a structure jutting out from the rear wall of his house, No. 1210 Walnut street, at about the level of the second story and extending upwards. The whole of this structure is more than eight feet above the level of the ground and more than fifty-nine feet south of the original line of Walnut street. Said structure is eight feet seven inches deep by six feet one and three quarter inches wide and nine feet three and one half inches high. It was built for a bath house, and is now fitted for no other purpose. It is built exclusively over defendant's lot, and not over any part of the soil belonging to the plaintiffs. At the time of defendant's purchase, and for a long time prior thereto, there was a bath room and water closet in the second story of 1210 Walnut street, north of the line fifty-nine feet south of the original line of Walnut street.

7. On the north side of Walnut street between Twelfth and Thirteenth streets there are sixteen houses, one of which is a store (northeast corner Thirteenth and Walnut streets). All the others are dwelling houses. On the south side of Walnut street between Twelfth and Thirteenth streets there are sixteen houses, seven of which are stores with bulk windows in front, three others occupied partially for business purposes, one a boarding house, and five dwelling houses. All the buildings on both sides of Walnut street up to 1854 were dwelling houses.

8. Notice of objection and warning to desist were given on behalf of the plaintiffs on August 6, 1894, immediately upon discovery of the intention to erect this structure, when it was but little more than begun, and an injunction applied for as soon as reasonably could be by filing of the bill.

9. This agreement is to be a substitute for all allegations of

fact in the bill and answer, and it is agreed that the said allegations of fact shall not be in evidence for any purpose.

10. Each party to have the right to appeal.

ARNOLD, J., filed the following opinion:

We have no doubt that the property owned by the defendant is subject to the building restriction sought to be enforced by the plaintiffs' bill. The restriction was created in 1828, and' while there may be said to have been a merger of the restriction between March 29 and July 1, 1854, by reason of the title to both properties, Nos. 1208 and 1210 Walnut street, being vested in Charles D. Meigs, yet it was revived in express words in the deed of No. 1210 Walnut street from Charles D. Meigs to John Forsyth Meigs of July 1, 1854, in which the said John Forsyth Meigs, for himself, his heirs and assigns, covenanted, promised and agreed with the said Charles D. Meigs, his heirs and assigns, owners of the messuage and lot of ground adjoining on the east, that is, No. 1208, " that the said John Forsyth Meigs, his heirs and assigns, shall not and will not erect or put up or cause to be erected or put up any building or part of a building or other obstruction except a bath house and privy and walls or fences not exceeding eight feet in height from the level of the ground on the said above described and granted lot of ground further south than fifty-nine feet from the original line of the said Walnut street."

On August 5, 1865, Charles D. Meigs and John Forsyth Meigs made an exchange of properties (although not by a technical deed of exchange) No. 1208 becoming thereby vested in John Forsyth Meigs and No. 1210 in Charles D. Meigs. The deed to Charles D. Meigs for No. 1210 Walnut street and the subsequent conveyances of- the property, recite at length the restriction created in 1854, and in the habendum declares that it is made " under and subject to the above mentioned conditions as the same are above particularly mentioned." The plaintiffs are the present owners of No. 1208 Walnut street and the defendant is the owner of 1210 Walnut street. By the agreed statement of facts it appears that early in August of the year 1894 the defendant began to build a structure jutting out from the wall of his house, No. 1210 Walnut street, at about the level of the second story and extending upwards. The whole of this

structure is more than eight feet above the level of the ground and more than fifty-nine feet south of the original line of Walnut street. Said structure is eight feet seven inches deep by six feet one inch and three quarters wide and nine feet three inches and a half high. It was built for a bath house and is fitted for no other purpose. It is built exclusively over the defendant's lot and is not over any part of the soil belonging to the plaintiffs. Notice of objection and warning to desist were given by the plaintiffs on August 6, 1894, immediately upon discovery of the intention to erect this structure, when it was but little more than begun. A bill for an injunction was filed the same day, and an ex parte injunction was granted on August 9, 1894. A hearing was had on August 17, 1894, at which the injunction was continued until the further order of the court; but, as at that time, the entire outer part of the bath house had been erected and it was roofed in, the preliminary injunction was unavailable to prevent the erection so far as it had gone. An answer was then filed and an agreement of facts entered into, which are substantially as averred in the bill and answer. Among these facts, in addition to those stated above, is an agreement that in 1854 bath houses were built in and over the second story of buildings and projected from the rear thereof. It is also agreed that in the square occupied by the plaintiffs' and defendant's houses there are sixteen houses, of which seven are stores, three are occupied partly as stores and partly as residences, one as a boarding house, and five are dwelling houses. We do not consider, however, that either of these facts overcomes the restriction.

The defendant contends that the restriction against building more than eight feet high applies to fences only, that being the word next to the words limiting the height to eight feet, and that the restriction does not apply to the other buildings enumerated in the restrictive clause, to wit, "bath houses, privies and walls;" or failing to prevail in this narrow application of the restriction, he contends that the matter is in such doubt that it should be resolved against the grantor, according to the canon of construction that a deed is to be construed most strongly against the grantor.

We do not, however, conceive that there is any doubt on the subject. The true rule is as contended for by the plaintiffs,

"that wherever several words and phrases are followed by a general qualifying expression, which is as much applicable to the first as to the last, the qualifying expression is not limited to the last, but applies to all the words." Instances of the application of this rule may be found in Eby's Appeal, 70 Pa. 311; Fisher v. Connard, 100 Pa. 63; Great Western Railroad Co. v. Swindon & Cheltenham Railway Co., L. R. 9 App. Cases, 808.

The claim of the defendant that there has been such a change in the neighborhood as to justify him in considering the building restriction as at an end, is not tenable. More than half the houses are still occupied as residences, although some of them are in part used for business. In the case of Orne v. Fridenberg, 143 Pa. 487, in which this principle was applied, it appeared that the whole neighborhood had been abandoned for residences and given up to business, and the forbidden erection had been up for over twenty-one years. The change of the neighborhood and the laches of the plaintiff, together, combined to deprive him of his right to an injunction, although he might have sued for damages.

As the defendant has violated the restriction and persisted in building the above structure after he was warned that proceedings would be taken against him, we will enter a decree requiring him to take down and abate it, as was done in Clark v. Martin, 49 Pa. 289; Reimer's Appeal, 100 Pa. 182, and Muzzarelli v. Hulshizer, 163 Pa. 643.

Let a decree be drawn up in pursuance of the prayer of the bill.

*Error assigned* was decree awarding injunction.

*Alex. Simpson Jr.*, with him *Robert T. Corson*, for appellant.—Covenants restraining a man in the free enjoyment of his property are not to be extended by implication: St. Andrew's Lutheran Church's App., 67 Pa. 512; McKissick v. Pickle, 16 Pa. 140; 1 Sharswood & Budd's Lead. Cas. 141; Jackson v. Gardner, 8 Johns. 394; Duryea v. New York, 62 N. Y. 592; Klær v. Ridgway, 86 Pa. 529; Warbrick v. Way, 2 W. N. C. 117.

At the time this covenant was entered into bath houses were

generally built in and from the second story of dwellings, and projected from the rear part thereof, just as this one does. Evidence to cover this second point is admissible: Gibson v. Tyson, 5 Watts, 34; Dorrance's App., 154 Pa. 523; Webb v. Hitchins, 105 Pa. 95.

The covenant should be construed as the common people would view it: Schuylkill Nav. Co. v. Moore, 2 Whart. 490; Dunham v. Kirkpatrick, 101 Pa. 43.

The strict rule of grammar would seem to require, as a general thing, a limiting clause, or phrase, following several expressions to which it might be applicable, to be restrained to the last antecedent. But this technical grammatical rule is liable to be displaced wherever the subject-matter requires a different construction, in obedience to the principle elsewhere discussed, that rules of that character are subordinated to a common sense reading of an enactment: Endlich on Interpretation of Statutes, sec. 414; Potter's Dwarris on Statutes, 210; Finch's Discourse on Law, bk. I. chap. 3; Cushing v. Worrick, 9 Gray (Mass.), 383; 2 Devlin on Deeds, 115, note 1; Broom's Legal Maxims, 680.

*John Samuel*, for appellees.—The rule of construction governing such a phrase is that whenever several words or phrases are followed by a general qualifying expression, which is as much applicable to the first as to the last, the qualifying expression is not limited to the last, but applies to all the words: Gyger's Est., 65 Pa. 311; Eby's App., 70 Pa. 311; Fisher v. Connard, 100 Pa. 63; State v. Conklin, 34 Wis. 27; Great Western R. R. v. Swindon & Cheltenham R. W. Co., 9 Law Rep. 808; Coxson v. Doland, 2 Daly, N. Y. 66; Pinchin v. London & Blackwall, R. W. 5 De G. McN. & G. 861; The Queen v. Cambria R. R., L. R. 6 Q. B. 422.

The words must receive a reasonable construction, and not one that would defeat the object of those using them: Muzzarelli v. Hulshizer, 163 Pa. 643.

In regard to the argument that the restriction should not be enforced, because of the alleged changed character of the neighborhood—that is, that what formerly was a locality of residences has now become a business street—if there were anything in the argument, the facts forbids its application: Orne v. Fridenburg, 143 Pa. 487.

Under the cases of Clark v. Martin, 49 Pa. 289; St. Andrew's Church's App., 67 Pa. 512; Muzzarelli v. Hulshizer, 163 Pa. 643, the decree must be affirmed.

OPINION BY MR. CHIEF JUSTICE STERRETT, Oct. 5, 1896:

After this cause was regularly at issue, it was agreed by the parties that certain facts, recited in their statement filed, shall " have the same force and effect as if duly proved and found according to equity practice," and that said facts shall, " be a substitute for all allegations of fact in the bill and answer," and further that said last mentioned allegations of fact " shall not be evidence for any purpose." The case was accordingly heard and disposed of on the substituted facts recited in said statement; and the sole question is whether upon those admitted facts the learned court erred in entering the decree from which the defendant has appealed.

Without referring in detail to all the recitals contained in the statement, it appears in the first and second paragraphs thereof that plaintiffs are the owners in fee of premises No. 1208 Walnut street, and the defendant, William Milligan, is the owner— by deed of July 10, 1894—of the adjoining house and lot, No. 1210 Walnut street, immediately west of plaintiffs' house and lot.

The facts, recited in the third and in the first sentence of the fourth paragraph, show that by regular deeds of conveyance the title in fee to premises Nos. 1208 and 1210 Walnut street became vested in Charles D. Meigs prior to July 1, 1854. On that day, as recited in the residue of the fourth paragraph, " Charles D. Meigs, being then the owner of Nos. 1208 and 1210 Walnut street, conveyed No. 1210 Walnut street to John Forsyth Meigs in fee by deed, duly recorded, which recited the condition set forth in paragraph 3, and contained the following covenant : 'And the said John Forsyth Meigs doth for himself, his heirs and assigns, covenant, promise, and agree to and with the said Charles D. Meigs, his heirs and assigns, owners of the messuage and lot of ground adjoining the above described and granted lot on the east, that he the said John Forsyth Meigs his heirs and assigns, shall not and will not, at any time or times hereafter, erect or put up or cause or suffer to be erected or put up any building or part of a building or other obstruction ex-

cept a bath house and privy and walls or fences not exceeding eight feet in height from the level of the ground, on the said above described and granted lot of ground further south than fifty-nine feet from the original line of the said Walnut street.' "

" On August 5th, 1865, Charles D. Meigs conveyed No. 1208 Walnut street to John Forsyth Meigs, by deed duly recorded, under and through which plaintiffs own that lot. And on same day, John Forsyth Meigs conveyed No. 1210 Walnut street to Charles D. Meigs by deed duly recorded, under and through which the defendant owns that lot. This deed and all the subsequent conveyances, under which the defendant derives title, recite at length the conditions in the deed of 1828, (quoted in paragraph 3), and also the covenant of John Forsyth Meigs, (above quoted), and all contain a recital, immediately after the clause of habendum et tenendum, that they are made 'under and subject to the above mentioned conditions' as the same are above particularly mentioned."

It is further agreed, inter alia, in paragraphs 6 and 8, that in August, 1894, the defendant commenced to construct a bath house, jutting out from the rear wall of his house at or near the level of the second story and extending up over his own lot more than nine feet above said level. This structure,—nearly nine feet deep, six feet wide and over nine feet high,—is more than eight feet above the level of the ground and more than fifty-nine feet from the original south line of Walnut street. Immediately upon discovering defendant's intention to construct this bath house, plaintiffs warned him to desist, and thereupon filed their bill praying for an injunction, etc.

On behalf of defendant, it was contended in the court below and here that the structure in question, which was completed and fitted up for a bath room or house, is not within the inhibition of the building restriction above quoted, because " a bath house " is one of the structures excepted from its operation, and the qualifying words " not exceeding eight feet in height," etc., apply only to inclosing " walls or fences," and not to either of the other structures—" bath house and privy "—specified in the same exception. The learned judge of the common pleas came to a different conclusion, and holding that the structure in question was prohibited by the building restriction he accordingly entered the decree from which this appeal was taken. In thus

construing the covenant running with the land we think he was clearly right. Our consideration of the facts presented in the statement above referred to has satisfied us that the purpose of the parties was to create an easement of light and air in favor of plaintiffs' lot by imposing the same on the lot now owned by the defendant, and to that end the covenant above quoted was incorporated in the deed. This is substantially the construction put upon the restriction clause by the learned judge, and his decree should not be disturbed.

Decree affirmed and appeal dismissed at appellant's costs.