## In re Plastic Club.

*Easements—Light and air—Dominant and servient tenements—Building restrictions—Injunction.*

1. A restriction which forbids the owner of a servient tenement to erect on a part of his land any building or part of a building "whatsoever other than a piazza of suitable height and a privy-house, bathing-house or wood-house, and walls or fences not exceeding ten feet in height from the surface of the ground," confers on the dominant tenement an easement of light and air and the erection thereon by the owner of the servient tenement of an "art gallery" which will very materially interfere with the passage of light and air to five windows existing for forty years in the house constructed upon the dominant tenement, will be restrained on a bill in equity filed by the owner of the dominant tenement, notwithstanding that all the properties in the block subject to the restriction, with the exception of four, have violated it to some extent.

2. In such case, the burden of proof is on the owner of the servient tenement to establish, in whole or in part, the destruction of the servitude; in the absence of evidence showing the extent of the violation of the restriction, the court will not assume that the easement is without substantial value or has been destroyed.

3. Where an easement of light and air is still of substantial value to the dominant tenement, it will be enforced in equity, notwithstanding the change in the character of the neighborhood; and neither a change in the character of the neighborhood nor the violation of the restriction is sufficient to extinguish it.

*Uniform Declaratory Judgments Act of June 18, 1923—Petition to determine extent of building restriction.*

4. Such a question may be properly raised and determined on a petition under the Uniform Declaratory Judgments Act of June 18, 1923, P. L. 840, to determine the extent of the restriction.

Petition under the Uniform Declaratory Judgments Act to determine the extent of certain building restrictions. C. P. No. 5, Phila. Co., Dec. T., 1924, No. 9001.

*R. T. Bonsall*, for petitioners.

*Bell, Kendrick, Trinkle & Deeter*, for contestant.

MONAGHAN, J., Oct. 27, 1925.—This is a proceeding under the Uniform Declaratory Judgments Act. Pursuant to the terms of the statute, the Plastic Club, owner of premises Nos. 247 and 249 South Camac Street, filed the petition for a decree declaring that certain building restrictions have become ineffective or obsolete as to its property and all the other real estate within the area bounded by Locust, 12th, Spruce and Camac Streets. The necessary parties were duly served with proper notice. Edward A. Devlin, owner of

premises Nos. 243 and 245 South Camac Street, filed an answer. He is the sole contestant herein.

The petitioner and the contestant, by their counsel, filed a statement of facts which, it is agreed, shall have the same force and effect as if found by a chancellor or by a special verdict of a jury. In the course of our discussion we shall refer to the facts deemed material to the determination of the questions involved.

In or about 1825 John Savage and Joseph Dugan were the owners of the land bounded on the east by 12th Street, on the west by Camac (then called Dean) Street, on the north by Locust Street, and on the south by Spruce Street. The entire tract was divided into lots. Two narrow east and west streets, Latimer and Manning, cross the land; the former, along the rear ends of all the lots on the Locust Street front; the latter, along the rear ends of all the lots on the Spruce Street front. The lots fronting on Camac Street, as well as those fronting on 12th Street, lie between Latimer and Manning Streets. Running along and between the rear ends of these lots is an alley twenty feet wide, terminating at each of the two last-named streets.

In or about the same year, 1825, Savage and Dugan conveyed all the lots to various persons, and by the deeds imposed building restrictions upon each parcel of land. The restrictions thus created against the lots fronting on Camac Street were: "It is hereby expressly understood and agreed by and between the parties hereto, and the above conveyance is made upon the express condition and restriction that the grantee (or grantees), his (or their) heirs or assigns, shall not at any time hereafter erect or build, or permit or suffer to be erected or built, on the hereby granted lot of ground any building or part of a building other than steps or cellar-doors within four feet of the line of Dean (now Camac) Street, and shall not erect or build, or permit or suffer to be erected or built, on any part of the easternmost thirty-four feet of the said lot, any building or part of a building whatsoever other than a piazza of suitable height and a privy-house, bathing-house or wood-house, and walls or fences not exceeding ten feet in height from the surface of the ground."

Restrictions substantially similar to those imposed on the Camac Street lots were imposed by the original deeds against each of the other lots; the restricted area, however, of the rear portion of each of the lots on Locust, 12th and Spruce Streets, respectively, being forty-two, fifty-nine and seventy-five feet.

Edward A. Devlin acquired title to premises Nos. 243 and 245 South Camac Street in 1903. The Plastic Club became the owner of the adjoining properties, Nos. 247 and 249 South Camac Street, in 1909. In each instance the vesting of title was by deed and was under and subject to the restrictions.

On the premises of the Plastic Club there is a two-and-a-half-story building, formerly a dwelling, used since 1909 as a club-house. On each of the Devlin lots there is a three-story building. The one, No. 243, has been, and now is, occupied as a residence. In the other, No. 245, which adjoins the Plastic Club, there is a real estate office on the first floor; the upper floors are used for residential purposes.

The Plastic Club wishes to build an art gallery within the easternmost thirty-four feet of its property. This, Devlin opposes, because the erection of such a building within that space is prohibited by the express terms of the restrictions and would interfere materially with the passage of light and air to his property. The petitioner admits that it has no right to build the art gallery if the restrictions are still effective.

The petitioner, at the threshold of its case, asserts the purpose of the restrictions to be the preservation of the land for residential purposes only, and claiming that the land and buildings are now used almost entirely for business purposes, insists that the covenant has become useless. This position is erroneous because of the falsity of the premises upon which it is based. Where is there anything in the record to support the first premise relating to the purpose of the restrictions?

The covenant does not contain any express prohibition against the erection on the unrestricted space of any particular kind of building, nor limit the uses to which it may be devoted. "Residence," "dwelling" or other word or expression of similar import does not appear in the restrictions. Any building on the unrestricted area might be used, wholly or in part, for residential, commercial, club or other purposes without the slightest conflict with the express terms of the covenant.

Counsel for the petitioner argues, however, that, as the covenant permits the erection in the restricted area of a piazza of "suitable height," without specification as to the precise height or the depth or width, each lot owner could build, without violating the covenant, a completely enclosed structure, calling it "a piazza," over the full depth and width of the restricted space, and to the height of the main building, and as such a structure would be in conformity with the express terms of the covenant, and, nevertheless, could seriously affect the passage of light and air to the adjoining premises or other properties, counsel contends that the purpose of the covenant could not have been the creation of an easement for light and air; therefore, the only purpose must have been the restriction of the buildings on the tract to residential uses. With this line of reasoning we cannot agree. The general rule of the covenant forbids the erection of any building or part thereof in the restricted area. If the rule stopped there, a piazza or the necessary outhouses could not be built in that space and the passage of air and light would be absolutely unobstructed. The covenant, however, permits the erection on the otherwise forbidden land of "a piazza of suitable height and a privy-house, bathing-house or wood-house, and walls or fences not exceeding ten feet in height from the surface of the ground." The structures are not specifically limited as to depth or width. The height is restricted. The piazza must be of "suitable height." What is a "suitable height" is to be determined as a fact after consideration of all the material circumstances. When established, the passage of air and light may not be obstructed by a piazza built beyond the height so found. The outhouses and fences cannot obstruct the passage of light and air beyond the height of ten feet. The limitation of the height of the structures is a provision for the passage of air and light to the upper portion of the property. This is consistent with, not contrary to, an interpretation of the entire covenant as one creating an easement of light and air. Restrictions substantially similar to the one under consideration have been held to create such an easement: Clark v. Martin, 49 Pa. 299; Muzzarelli v. Hulshizer, 163 Pa. 643; Landell v. Hamilton, 175 Pa. 327; Meigs v. Milligan, 177 Pa. 66; Weiser v. Freeman, 227 Pa. 78. And the covenant in the instant case was so construed in Devlin v. Poor Richard Club, 19 Dist. R. 326, and in Devlin v. Poor Richard Club, C. P. No. 2, March Term, 1920, No. 2291.

We are not unmindful of the general rule that the language of a covenant should be interpreted in the light of the apparent object or purpose of the parties and of the conditions existing when made: Rabinowitz v. Rosen, 269 Pa. 482. But a purpose to restrict the buildings to residential uses has not been shown by any circumstances or conditions existing when the covenant

was made. In the beginning, it is true, all the buildings on the tract were residences. Then, and for many years thereafter, they were used as dwellings, and the restrictions relating to structures on the rears of the lots were strictly observed. These circumstances alone, or considered in connection with the language of the covenant, do not give rise to an inference of an intent at the time the covenant was made to impress the tract with a residential character. Furthermore, while building restrictions are enforceable, they are not favored by the law, and covenants relating to them are not to be extended by implication: St. Andrew's Lutheran Church's Appeal, 67 Pa. 512; Crofton v. St. Clement's Church, 208 Pa. 209; McCloskey v. Kirk, 243 Pa. 319; Dewar v. Carson, 259 Pa. 599.

The purpose of the covenant was not to preserve the residential character of the tract. Even if it were, we are not convinced of such a change from residential character as to justify for that reason a conclusion that the restrictions have become ineffective or obsolete. Until 1866, the block bounded by Locust, 12th, Spruce and Camac Streets was entirely residential in character. At present it contains thirty-four properties. Nine of these are residences, eleven are devoted exclusively to business, five are club-houses, seven are occupied by business or doctors' offices on the ground floor and have apartments above, in two business is conducted on the first floor, and the remaining portions of the properties are used for business and for rooms and apartments.

From the meagre statement of facts furnished by counsel, there would appear to be, notwithstanding the invasion of the neighborhood by stores, doctor's offices, etc., an equal, if not greater, use of the properties for residential than for business purposes. The claim, therefore, of the petitioner that there has been such a change in the neighborhood as to justify considering the building restrictions as at an end is not tenable: Meigs v. Milligan, 177 Pa. 66. When a neighborhood is in transition, but remains to a considerable extent residential, the covenant may be enforced: Hunter v. Wood, 277 Pa. 150. And, notwithstanding a change in the use of the land and buildings in the neighborhood, equity will restrain the violation of the restriction so long as it remains of substantial value to the owner of the dominant estate: Landell v. Hamilton, 175 Pa. 327; Phillips v. Donaldson, 269 Pa. 244.

As we have indicated, the covenant in the present case was intended to, and did, create an easement of light and air for the benefit of each property owner in the tract: Clark v. Martin, 49 Pa. 299; Muzzarelli v. Hulshizer, 163 Pa. 643; Landell v. Hamilton, 175 Pa. 327; Meigs v. Milligan, 177 Pa. 66; Weiser v. Freeman, 227 Pa. 78; and runs with the land. Moreover, we have found the change of character of the neighborhood not sufficient to render the building restrictions ineffective. The question arises whether violations of the covenant have been of such a nature and extent as to render it useless. In the entire block, all the properties excepting four violate the restrictions to some extent. In many instances, the restrictions have been extinguished on a part thereof by adverse user for more than twenty-one years. The violations have been gradual. Some occurred prior to Devlin's acquisition of title in 1903. Since then there have been violations of the restrictions by additions or alterations to the buildings, Nos. 248 and 254 South 12th Street, northwest corner 12th and Spruce Streets, Nos. 1203 and 1215 Spruce Street, Nos. 233, 237, 249, 251 and 253 South Camac Street, Nos. 1212 and 1214 Locust Street.

All buildings now within the restricted areas must be regarded as being there with the common consent of the several owners. To the extent that the structures exist and interfere with his light and air, no property owner may

now complain: Englander v. Apfelbaum, 56 Pa. Superior Ct. 145; Landell v. Hamilton, 177 Pa. 23; Hohl v. Modell, 264 Pa. 516; Phillips v. Dunseith, 269 Pa. 251. There is undoubtedly some interference, but its nature and extent have not been shown. The burden of proof is on the petitioner to establish, in whole or in part, the destruction of the easement. This it has failed to do. In the absence of evidence, we cannot assume an appreciable interference with the passage of light and air, nor that the easement of any or all the properties is without substantial value or has been destroyed: Lattimer v. Livermore, 72 N. Y. 174. Under the circumstances, we cannot presume that the covenant has been wholly abrogated by common consent of the owners or any of them.

The buildings on the restricted areas of the lots of the petitioner and of others do not appear to have destroyed or materially affected the passage of light and air to Devlin's property. To the extent of the acquiescence by Devlin or his predecessors in title, he cannot now object. The fact, however, that he or they violated the building restrictions in the same manner as the petitioner or others would not bar him from invoking the jurisdiction of equity to restrain a further and different encroachment to his injury: Englander v. Apfelbaum, 56 Pa. Superior Ct. 145; Landell v. Hamilton, 177 Pa. 23. Devlin has always promptly protested against all violations or intended violations of the restrictions when they might materially or sensibly affect the passage of light and air to his property. On at least two occasions, he instituted proceedings in equity to restrain what he conceived to be attempted invasions of his rights by the Poor Richard Club, which is the owner of the property immediately to the north of and adjoining his land. When, in 1908, he discovered the Poor Richard Club was about to erect a structure in the restricted area of its lot, he filed a bill in equity in this court: Devlin v. Poor Richard Club, 19 Dist. R. 326. The court dismissed the bill because the structure to be erected was a "piazza of suitable height" permitted by the express terms of the restrictions. In 1920 the same club attempted to build a dining-room on the easternmost thirty-four feet of its lot. Devlin filed a bill, praying for an injunction to restrain the erection of the building. The chancellor, affirmed by the court in banc, found the restrictions to be for the purpose of creating an easement of light and air; that they were still effective, and enjoined the erection of the contemplated building.

The petitioner urges that, as Devlin never raised objection to violations remote from his property, he should not be permitted to object to violations in proximity to it. There is no proof that violations of the restrictions on the more remote portions of the tract did or could materially or sensibly affect the passage of light and air to his property. "A person entitled to enforce a restrictive covenant may have notice of violations which inflict no substantial injury on him without losing the right to enforce the restrictions in case of a substantially injurious violation by a failure to take steps to restrain the first-mentioned class of violations:" 32 Corpus Juris, 211, par. 326. The fact that the right to injunctive relief against violations of a restrictive covenant has been lost by laches or acquiescence in no way affects the right to enjoin further violations of the covenant: Phillips v. Dunseith, 269 Pa. 251; and see Mitchell v. Bovard, 279 Pa. 50.

The proposed art gallery is a further and different encroachment on the restricted area of petitioner's lot, and, as admitted, it will "very materially" interfere with the passage of light and air to five windows existing for forty years in the adjoining building of Devlin. This interference, being additional and "very material," shows the easement of Devlin to be still of substantial

value. It is well and clearly established in this State that where an easement of light and air is still of substantial value to the dominant tenement, it will be enforced in equity, notwithstanding a change in the character of the neighborhood; and neither a change in the character of the neighborhood nor a violation of the restrictions is sufficient to extinguish it: Muzzarelli *v.* Hulshizer, 163 Pa. 643; Landell *v.* Hamilton, 175 Pa. 327; Meigs *v.* Milligan, 177 Pa. 66; Hunter *v.* Wood, 277 Pa. 150; and see Hohl *v.* Modell, 264 Pa. 516; Phillips *v.* Dunseith, 269 Pa. 251.

There has not been sufficient proof presented to warrant us in declaring the restrictions ineffective or obsolete as to any of the owners.

Counsel will prepare and present a form of decree.