LaRue, Appellant, *v.* Weiser.

Argued June 2, 1954. Before Stern, C. J., Stearne, Jones, Bell, Chidsey, Musmanno and Arnold, JJ.

*William Austin Meehan,* with him *Philip Stern* and *Meehan, O'Brien & Richette,* for appellants.

*Harry Shapiro,* with him *Irwin Edward Robinson* and *Shapiro, Rosenfeld, Stalberg & Cook,* for appellees.

Opinion by Mr. Chief Justice Horace Stern, June 28, 1954:

The court below refused to issue an injunction restraining defendants from extending their building in-

to a restricted area. Plaintiffs appeal from its decree so holding and dismissing their bill of complaint.

In 1887 the Blake Mutual Land Improvement Company owned land in the northeastern section of Philadelphia bounded on the east by Dungan Street, on the west by Oxford Avenue and Rising Sun Avenue, on the north by Bleight Street, and on the south by Cottman Avenue. It recorded a plan of lots to be laid out in the tract and, in its original deeds, created a building restriction affecting each of the lots it conveyed. This restriction provided, inter alia, that no building should ever be erected within 14 feet of any street or avenue upon which the lot should front. In 1891 the deed to defendants' predecessor in title contained this restriction. At that time the entire tract consisted of farm land with a single house thereon, but it developed into a built-up residential area. Originally Cottman Avenue was known as Township Lane and was legally opened to a width of 33 feet but in 1891 it was established with a cartway of 40 feet and two 14-foot sidewalks and in the period between 1912 and 1915 it was further widened to 100 feet with a cartway of 60 feet and two 20-foot sidewalks.

Defendants' property consists of a furniture store building at 1225-1229 Cottman Avenue; they also own a detached dwelling house, 1231 Cottman Avenue, in which they reside. Plaintiffs own and occupy premises on the north side of Cottman Avenue between Dungan and Claridge Streets, but those who are most interested herein are in the block between Montour and Claridge Streets, where defendants' property is located. Defendants, having obtained a permit for the purpose, have started to extend the front of their store building southerly for some distance into the 14-foot restricted area, where they propose to erect a one-story addition completely enclosed in glass, and in

which it is their intention to display their furniture, carpets, linoleum and rugs.

The first subject of controversy between the parties is in regard to the original object of the restriction. Defendants contend, and the court below was of the opinion, that it was designed merely for aesthetic purposes, that is, to insure the better appearance of the streets and to preserve the residential character of the neighborhood. Plaintiffs, on the other hand, urge that it was also to protect the light, air and view of the residents of the houses which, it was anticipated, would occupy the tract, and it is, of course, true that while an easement to light and air cannot be acquired in Pennsylvania by prescription and the doctrine of ancient lights is not part of our law, an easement to light and air *may* be acquired, as any other easement, by express or implied grant.[1]

Defendants' principal contention is that, *whatever* the purpose of the restriction may have been, the changes that have taken place in the area in the 63 years since the restriction was originally created would now make any enforcement of it in equity wholly unjust, impractical, and harmful to the entire district. It appears that during that period the character of the neighborhood has markedly changed. The area covered by the properties of these plaintiffs and defendants has been zoned commercial and is now almost completely commercial in fact. In the block in which defendants' property is situated, 1219-1221 Cottman

---

[1] *Clark v. Martin*, 49 Pa. 289, 297, 298; *Muzzarelli v. Hulshizer*, 163 Pa. 643, 646, 30 A. 291, 292; *Landell v. Hamilton*, 175 Pa. 327, 335, 336, 34 A. 663, 665; *Meigs v. Milligan*, 177 Pa. 66, 76, 35 A. 600, 601; *Murphy v. Ahlberg*, 252 Pa. 267, 270, 97 A. 406, 407; *Garvin, & Co. Inc. v. Lancaster County*, 290 Pa. 448, 452, 139 A. 154, 155; *Maioriello v. Arlotta*, 364 Pa. 557, 559, 73 A. 2d 374, 375. Cf., however, *Henry v. Eves*, 306 Pa. 250, 256, 159 A. 857, 858.

Avenue is a grocery store, 1223 is a confectionary store, 1225-29 is defendants' furniture store, 1231 is defendants' dwelling house, 1233 and 1235 are semi-detached dwelling houses, 1237 is a shoe store and 1239 a drug store.[2] The testimony disclosed that there are now erected in the tract at least 38 buildings which are used for commercial purposes, including two tap-rooms, two real estate offices, three garages and gasoline service stations, a bakery, two auto supply stores, a tailoring establishment, a tropical fish store, a music store, several grocery stores, a restaurant and cafe, an automobile agency, a shoe store, a drug store, and other types of retail merchandising establishments and garages rented to owners of private automobiles. Cottman Avenue itself, greatly widened as previously stated, has become an important business street and artery of traffic. Light, air and prospect, undoubtedly important to residents of front-porch houses, play much less part in the case of store properties. To preserve the restricted building line at a distance of 34 feet north from the north curb of Cottman Avenue instead of flush with the inner line of the 20-foot sidewalk would seem to be, under present conditions, a sheer waste of valuable space for the commercial properties now occupying the street and without any real or substantial benefit to anybody. Incidentally, the dwelling houses of the plaintiffs at 1233 and 1235 Cottman Avenue are at an appreciable distance from the property of defendants which is to be extended.

The authorities are numerous to the effect that, where a change in neighborhood conditions is so radical and complete as practically to destroy the purpose for which the restriction was originally imposed,

---

[2] Some of these store properties have residences or apartments on their second floors.

equity will not aid its literal observance. In *Orne v. Fridenberg*, 143 Pa. 487, 502, 503, 22 A. 832, 834, the court said: "The location is no longer a residential neighborhood, . . . This entire change of circumstances and surroundings might well make a chancellor hesitate ere he apply the strong arm of an injunction. There is a line of well-decided cases which hold that such changes in the neighborhood, the character of the improvements, and the purposes to which they are applied, are sufficient to justify a chancellor in refusing an injunction to restrain violations of building restrictions. [citing cases]."

In *Henry v. Eves*, 306 Pa. 250, 259, 260, 159 A. 857, 859, 860, it was said: "Authority is abundant that changes in the predominant character of a neighborhood in which property subject to a building restriction is located, whether wrought by the acquiescence of adjacent property owners or by the slow yet resistless evolution of time, may prevent the rigid enforcement of such a restriction by a court of equity. . . . Where the exigencies of altered conditions in a neighborhood render a strict adherence to the terms of the restrictive covenant useless to the dominant tenement, or absurd, or futile, or ineffective to achieve the end desired, it would be an anachronism to interpose equitable relief in support of it."

In *Peoples-Pittsburgh Trust Co. v. McKinley-Gregg Automobile Co.*, 353 Pa. 110, 44 A. 2d 295, it was held, as stated in the syllabus, that "Where a neighborhood in which property subject to a building restriction is located has so changed in character that the restriction is no longer of practical utility and would prohibit the use of the land under existing zoning ordinances, the restriction is not enforceable . . . ."

In *Price v. Anderson*, 358 Pa. 209, 217, 218, 56 A. 2d 215, 219, 220, it having been found from the testi-

mony that " 'There has been a definite change in the predominant character of the neighborhood from residential to commercial uses by reason of the natural forces of demand by the concentrated population, the acts of commission and omission of the plaintiffs and the needs of the community,' " the court said: "It is an elementary principle of equity jurisprudence that such a decided change of conditions makes it improper for a chancellor to enforce a covenant which limits the full right of an owner to develop his property; this is because public policy dictates that land shall not be unnecessarily burdened with permanent or long-continued restrictions and because equity will not retard improvements simply in order to sustain the literal or technical observance of a covenant which for one reason or another has become useless from the standpoint of any practical utility."

In *Katzman v. Anderson,* 359 Pa. 280, 285, 59 A. 2d 85, 87, it was said that ". . . equity will not enforce a restriction if the nature of the neighborhood changes has been such as to make it impossible to accomplish the objects for which it was designed, even though such changes may have resulted from circumstances over which neither of the parties had any control. It being a general policy of the law that land shall not be burdened with permanent or long-continued restrictions which have ceased to be of any advantage, equity will not, in such cases, prohibit or retard improvements simply to enforce the literal observance of a condition or covenant. Nor will equity grant injunctive relief if the enforcement of a restriction would make the land unfit or unprofitable for use and development, or result in a far greater hardship to the servient than a benefit to the dominant tenement. These principles of equity jurisprudence have been proclaimed in many cases: . . . ."

444

The cases thus cited are all in accord with the pronouncement of Restatement, Property, §564, that "Injunctive relief against violation of the obligations arising out of a promise respecting the use of land cannot be secured if conditions have so changed since the making of the promise as to make it impossible longer to secure in a substantial degree the benefits intended to be secured by the performance of the promise."

It is true that the principle thus stated may be regarded as modified by the equally well established doctrine that where a building restriction is still of substantial value to a dominant lot notwithstanding changes in the use of the land and buildings or in neighborhood conditions equity will restrain its violation.[3] Here, however, the benefit to these plaintiffs that would result from an enforcement of the restriction would be so slight,—especially in comparison with the advantage that would inure to the entire tract by the refusal of equity to enforce it in view of the changed character of the neighborhood,—that the court below was clearly right in denying the relief sought by plaintiffs and dismissing their bill.

Decree affirmed, costs, however, to be paid by appellees.

---

DISSENTING OPINION BY MR. JUSTICE BELL:

The real difference between the majority and myself is that they believe the restriction in issue was a

[3] *Landell v. Hamilton*, 175 Pa. 327, 337, 34 A. 663, 666; *Phillips v. Donaldson*, 269 Pa. 244, 250, 251, 112 A. 236, 239; *Hunter v. Wood*, 277 Pa. 150, 152, 120 A. 781, 782; *Benner v. Tacony Athletic Association*, 328 Pa. 577, 581, 196 A. 390, 392, 393; *Todd v. Sablosky*, 339 Pa. 504, 508, 15 A. 2d 677, 679; *Price v. Anderson*, 358 Pa. 209, 219, 56 A. 2d 215, 220; *Katzman v. Anderson*, 359 Pa. 280, 284, 285, 59 A. 2d 85, 87; *Pehlert v. Neff*, 152 Pa. Superior Ct. 84, 87, 31 A. 2d 446, 448.

"residential restriction for aesthetic reasons", whereas I believe that it was undoubtedly a restriction for light and air. If the majority's premise is incorrect, their conclusion is likewise incorrect.

Defendants own a detached dwelling house at 1231 Cottman Avenue, Philadelphia. They likewise own a furniture store at 1225-29 Cottman Avenue. Plaintiff LaRue owns the next door property, 1223 Cottman Avenue, which is his residence, with a confectionery store on the ground floor. Plaintiff Wiest owns 1219-21 Cottman Avenue, which is his residence but has a grocery store on the ground floor. Mrs. Vorlander owns a semi-detached dwelling at 1233 Cottman Avenue and Mrs. Greenwood owns a semi-detached dwelling house at 1235 Cottman Avenue. Mrs. Potticham owns a semi-detached property at 1237 Cottman Avenue, with a shoe store on the ground floor and her residence on the second floor. Mrs. Shapiro is the owner of 1239 Cottman Avenue, which is a semi-detached dwelling house, with a drug store on the ground floor and her residence on the second floor.

Defendants plan to build in the restricted zone a one-story addition to their furniture store covering three lots, with the indisputable result that the plaintiffs who live next door certainly, and other neighbors probably, will be deprived to a substantial extent of their light and air.

The restriction which was not quoted by the majority opinion in full is as follows: ". . . there shall not be erected thereon any building which shall be used at any time forever or occupied for the manufacture, brewing, distilling or sale of malt or spirituous liquor . . .". It is impossible to hold that this was a restriction for residential purposes; it was obviously a restriction against the erection of a building to be used

or occupied for the manufacture, brewing, distilling or sale of liquor.

The only other pertinent provision of the restriction is as follows: ". . . no building shall be erected within 14 feet of any street or avenue upon which the said lot shall front . . .".

It is likewise impossible to find in or to cull out of these words a restriction limiting the buildings to residences, or prohibiting commercial buildings or uses. The majority opinion, in pointing out that 38 buildings in this block are used partly for stores, as well as for residences, demonstrates more clearly than anything else could the fact that this was never intended to be a restriction for residential homes. *This restriction applies, and can apply only to light and air.* If such a restriction appeared in a zoning ordinance, any counsel who contended that it was intended to and did prohibit the erection of commercial buildings and limited the zoned community to residential properties would be laughed out of Court. It is clear that such a setback restriction, if it were contained in a zoning ordinance, would be interpreted and could be sustained not as a residential restriction or for aesthetic purposes, but as a reasonable provision for light and air (health or safety). Cf. *Kerr's Appeal,* 294 Pa. 246, 251, 144 A. 81; *Medinger Appeal,* 377 Pa. 217, 104 A. 2d 118. It is clear therefore that this was and is a restriction for light and air.

While an easement for light and air cannot be acquired in Pennsylvania by prescription, and the doctrine of ancient lights is not part of our law, the majority admit that an easement for light and air may be acquired, as may any other easement, by express or implied grant:* *Clark v. Martin,* 49 Pa. 289, 297, 298;

---

* This does not include an implication arising out of necessity: *Maioriello v. Arlotta,* 364 Pa. 557, 73 A. 2d 374.

*Muzzarelli v. Hulshizer*, 163 Pa. 643, 646, 30 A. 291, 292; *Landell v. Hamilton*, 175 Pa. 327, 335, 336, 34 A. 663, 665; *Meigs v. Milligan*, 177 Pa. 66, 76, 35 A. 600, 601; *Garvin & Co., Inc. v. Lancaster County*, 290 Pa. 448, 452, 139 A. 154, 155. The aforesaid cases hold that a restriction against building (a) within a specific number of feet from a street line (or within a specific portion of a lot), or (b) higher than a specified height, *creates an easement of light and air* and equity will enjoin any attempted violation of such easement by the servient tenement (even compelling a servient tenement owner to tear down a house which he erected within the restricted area: *Clark v. Martin*, 49 Pa., supra).

In *Landell v. Hamilton*, 175 Pa., supra, an owner divided his land in 1832 into three lots and in the deed for the middle lot provided that no building or part of a building shall be erected on the lot within 5 feet of the south line of Chestnut Street. At the time Chestnut Street was entirely residential. Defendant purchased the lot in 1895 and planned to erect a building thereon which would violate the covenant. Defendant there contended, as do these defendants, that this was merely a building restriction and that Chestnut Street had changed to such an extent that it was now composed almost entirely of business or commercial properties. This Court reversed the lower Court and said that the obvious purpose of the restriction was to afford light and air, and that no violation of such a restriction would be permitted even though the character and use of the land and buildings on Chestnut Street had completely changed. The Court's opinion (pp. 336-337) is equally applicable to the facts in the instant case: "It is probable that deprivation of air is less endurable to the occupants of a dwelling, than to those of a store or factory; and generally the

latter are less disposed to resist such deprivation; but *these elements promote the health and comfort of one class of occupants as fully as the other, and both have the same right to insist on a restriction for their protection.*\* No such change in the use of the land as appears here has ever been held destructive of the original covenant in any of the adjudicated cases in this state; nor, in our opinion, can such judgment be sustained on sound legal principles. . . .

"As long as such restrictions are not unlawful, it is to no purpose to argue, that they seriously retard the improvement of the city. We can no more strike down by decree a lawful restriction creating an easement, than we can compel the lot owner to erect buildings in accord with the best style of architecture. Contracts such as this, whether construed as covenants or conditions, since Spencer's case, have been enforced, both at law and in equity, between the immediate parties to them and their grantees, near and remote. . . . But what this court has uniformly held, and now holds, is, that *where the restriction, notwithstanding the change of use of the land and buildings, still is of substantial value to the dominant lot, equity will restrain its violation,* if relief, as here, is promptly sought. . . ."

This is undoubtedly still the law of Pennsylvania! *Katzman v. Anderson*, 359 Pa. 280, 284, 285, 59 A. 2d 85, 87; *Price v. Anderson*, 358 Pa. 209, 219, 56 A. 2d 215, 220; *Todd v. Sablosky*, 339 Pa. 504, 508, 15 A. 2d 677, 679; *Benner v. Tacony Athletic Association*, 328 Pa. 577, 581, 196 A. 390, 392, 393; *Hunter v. Wood*, 277 Pa. 150, 152, 120 A. 781, 782; *Phillips v. Donaldson*, 269 Pa. 244, 250, 251, 112 A. 236, 239; *Landell v. Hamilton*, 175 Pa., supra.

---

\* Italics throughout, ours.

The light and air in the homes and stores of several of the plaintiffs unquestionably will be substantially affected and restricted by defendants' proposed violation of this light and air easement, and since the restriction is still of substantial value to the dominant tenements, its violation should be restrained.

For these reasons I would reverse the decree of the Court below and here enter a permanent injunction.

Mr. Justice MUSMANNO joins in this dissenting opinion.