## Phillips et al., Appellants, *v.* Donaldson.

*Deeds—Covenants—Building restriction—Offensive business—Garage—Nuisance—Equity—Injunction—Laches—Waiver.*

1. Where a deed for a lot of land in a plan of lots in a residential district, contains a covenant that the grantee and his successors shall not conduct upon the lot "any noxious, or offensive trade, ......to the hurt, damage or annoyance of others" who may purchase in said plan, equity will restrain the operation of a public garage on a lot in the plan, where the residential character of the district has not materially changed, and evidence shows that the maintenance of such garage will be a "hurt, damage or annoyance" to the lot holders.

2. The covenant was not so much against a public nuisance as against "hurt, damage or annoyance." To hold that proof of its infraction must measure up to that required for a public nuisance, would place the grantee in no better position than any other person in the locality, which was manifestly not the intention of the grantor.

3. In such case, it is not necessary that the community, or a majority of the lot owners whose rights are affected, should complain of the particular violation.

4. If the lot owners instituted their action promptly, they cannot be charged with laches, although they may have been silent for a time.

5. An offer to sell is not a waiver of their right as lot owners.

Argued October 20, 1920. Appeal, No. 61, Oct. T., 1920, by plaintiffs, from decree of C. P. Allegheny Co., Oct. T., 1917, No. 1345, dismissing bill in equity, in case of Henry A. Phillips et al. v. Thomas Donaldson. Before Brown, C. J., Moschzisker, Frazer, Walling, Simpson and Kephart, JJ. Reversed.

Bill in equity for an injunction to restrain the operation of a public garage. Before Wasson, J.

The opinion of the Supreme Court states the facts.

The court dismissed the bill. Plaintiffs appealed.

*Errors assigned,* among others, were above decree, quoting it, and refusal of plaintiff's seventh request, stated in the opinion of the Supreme Court, quoting it.

*Gifford K. Wright,* of *Alter, Wright & Barron,* with him *Alexander C. Tener,* for appellant.—The operation of a public garage is a noxious and offensive business within the terms of the covenant: Prendergast v. Walls, 257 Pa. 547; Hohl v. Modell, 264 Pa. 516.

There has been no such change in the character of the neighborhood as to relieve the respondent of the burden of the covenant: Landell v. Hamilton, 175 Pa. 327.

There is no circumstance in the case, which precludes the plaintiffs from insisting upon the enforcement of the covenant: Hill v. Epley, 31 Pa. 331; Bright v. Allan, 203 Pa. 394; Logan v. Gardner, 136 Pa. 588.

*William R. Murphy,* with him *Charles G. McIlvain,* and *Earl J. Mohn,* for appellees.—The operation of this garage was not a noxious and offensive business within the terms of the covenant: Prendergast v. Walls, 257 Pa. 547; Hibberd v. Edwards, 235 Pa. 454; Hohl v. Modell, 264 Pa. 516.

There has been such change in the character of the neighborhood as to relieve the appellees of the operation of the covenant: Landell v. Hamilton, 175 Pa. 327; Carroll v. Asbury, 28 Pa. Superior Ct. 354.

The appellants were guilty of laches: Good v. Queens Run Fire Brick Co., 224 Pa. 496; Powers' App., 125 Pa. 175; Gatzmer v. St. Vincent's School Society, 147 Pa. 313.

OPINION BY MR. JUSTICE KEPHART, December 31, 1920:

This case comes to us from a decree dismissing a preliminary injunction restraining defendant from operating a public garage in violation of a covenant in a deed, which reads as follows: "The grantee doth moreover for himself, his heirs and assigns, covenant and

agree to and with the said parties of the first part that they will not, at any time hereafter, set up, establish, conduct or carry on upon the premises hereby granted, or any part thereof, any noxious or offensive trade, business or employment, to the hurt, damage or annoyance of others who have purchased, or may hereafter purchase, in said plan."

Donaldson contemplated erecting a building to be used and operated as a public garage. A public garage is not a nuisance per se, as is a glue factory. A lawful business can never be a nuisance in fact or in anticipation, if it is carried on reasonably and with due regard for the health and peace of others: Rhoades v. Dunbar, 57 Pa. 274. There is a distinction between a public nuisance, common to all members of the public alike, and a private nuisance or acts affecting a member of the public. A public nuisance is an inconvenience or troublesome offense that annoys the whole community in general, and not merely some particular person, and produces no greater injury to one person than to another— acts that are against the well-being of the particular community—and is not dependent upon covenants. The difference between a public and a private nuisance does not depend upon the nature of the thing done but upon the question whether it affects the general public or merely some private individual or individuals: 20 Cyc. 1152; 4 Blackstone 166. A public garage has been determined to be a nuisance in a residential district, and this would be the case whether it was in violation of a building restriction or an annoyance to the general community: Prendergast v. Walls, 257 Pa. 547; Hibberd v. Edwards, 235 Pa. 454; Hohl v. Modell, 264 Pa. 516. But such garage would not be a nuisance in a section devoted to business purposes. Between these two zones there may be some uncertainty. It concerns property partly residential and partly business, and, as affecting such territory, some cases arise where a portion of the land is covered by a restriction in the deed, as in the pres-

ent case, while there are other cases where there is no restriction.  We are not concerned with the latter.

The court below construed the covenant as being one against public nuisances.  Appellants do not seek to enjoin the commission of a public nuisance, nor do they take the position that they are specially aggrieved as members of the general public.  What they ask is that the covenant, to which they and the appellees are parties or privies, should be enforced.  It is not so much the question of a nuisance as that of "hurt, damage or annoyance."  The acts complained of need not correspond with those necessary for a nuisance, private or public.  The grantor certainly intended to put the grantee in a better position than other members of the public when he embodied the covenant in the deed.  To hold that proof of its infraction must measure up to that required for a public nuisance places the grantee in no better position than any other person in the locality.

Nor, under such covenant, is it necessary that the community or a majority of the lot owners whose rights under the covenant are affected, should complain of the particular violation.  The covenant reads: "to the annoyance of others who have purchased in the plan," not all others.  We quite agree that such covenant should be strictly construed, but, when acts fairly within its scope are committed, we should not hesitate to enforce its provisions where one of the dominant owners seeks such enforcement in an unchanged locality.

It is argued we should take judicial notice of the fact that in the operation of a public garage there exist such accompanying disturbances or other conditions as will make it obnoxious and a violation of the covenant, urging that, without proof of probable annoying conduct, it would be a nuisance in a residential district.  Because of their extensive use, and the general knowledge of such use, we might be inclined to agree, but it is not necessary to so decide in the present case, for, under the facts overlooked by the chancellor, we find there is ample evidence

to show the covenant would be violated by the operation of the proposed garage. This appears from the following testimony: (1) the way in which an existing garage was operated in the neighborhood, (2) the noise necessarily incident to a machine shop to be connected therewith—this information was acquired from what occurred at a similar plant since abandoned, (3) the manner in which every public garage is conducted, and (4) the actual daily annoyance suffered by complainants from the existing garage.

This evidence is summed up in plaintiffs' seventh request for finding, refused by the chancellor, who said: "Not content, however, to rest their case on the evidence produced, they asked us to go outside of the record and find, as matters of judicial cognizance, many things which by their very nature could not be ascertained or determined except by proof." The evidence shows: automobiles, blowing their horns, constantly passed in and out of the garage during the day and night; engines were tested, with the motors running at varying rates of speed; carburetors were adjusted; back-firing; motors raced in starting; traffic blocked; hammering on iron heard some squares away and grease and oil on the pavement. This testimony should have satisfied the chancellor. The language was clear to ordinary persons, the terms were not technical, and, unless the witness was called on for further explanation, counsel might well have assumed the chancellor was possessed of as much information on the subject under investigation as he was. When an adjustment of carburetors was indicated, or motors raced in testing engines, it meant that, to ascertain whether the carburetor was working properly, it was necessary to speed up the engine from low to high speed, then back to low, adjusting the carburetor as indicated by the explosion from the motor. This was accompanied by an unusual exhaust, and could not be otherwise. When the exhaust from the motor was described as being an annoyance, the odor was considered

as well as the noise connected with it.  These odors were disagreeable, offensive and dangerous, as burned gas and oil in smoke were emitted from motors during this adjustment.  When back-firing was mentioned, it had reference to the excessive and violent explosions which took place in the muffler, sounding much like the crack of a gun.  We might continue this subject, but it is not necessary.  The point we wish to make is, if the chancellor did not understand these to be natural elements connected with the description given, he should have informed himself.

The sidewalk was blocked by automobiles going in and out of the garage involved in this litigation.  That mechanics, chauffeurs, and others would congregate in large numbers on the street at the garage is evident from the number of cars standing in front of or near the building.  Gasoline was stored in large quantities, one hundred machines being served in a day; oil was sold; Dr. Kelso testified his wife had a bad fall from oil and grease on the pavement.  Plaintiff was compelled to practically abandon the use of his front porch because of the annoyance.

Appellants' seventh request should have been affirmed.  A violation of the restriction must occur if the garage was permitted to be operated.

Although the covenant may have been violated, still, if there was such a change in the surrounding locality from a residential to a business section, its enforcement would be a useless thing.  Generally, the use of a part of the property subject to a restriction different in character from that observed at the time the covenant was made, will not cause the remaining subservient property, in law, to follow such change: Landell v. Hamilton, 177 Pa. 23.  The idea was to make this a residential section; there are a great many fine homes built in this locality, the Western Theological Seminary is located within two blocks of the proposed building, a very pretty park

is in front of it, and no doubt the conveyance intended to preserve the surroundings as a residential district.

A pickle factory beyond the railroad, a garage (here in litigation), and a transfer station, constitute the business houses on a portion of the restricted area near the railroad; it is within this section defendant wants to erect his garage. We need not determine the condition of the property on Marian avenue. The railroad makes a division in the restricted area as to changed locality. Of course, if the character of the locality has become so altered and the condition of the adjoining lands so changed that the restrictions of the covenant cease to be applicable according to its intent and spirit, it would be useless to enforce it: Landell v. Hamilton, 175 Pa. 327. But there is no such change in the neighborhood to justify us in considering the restriction at an end. A great many of the houses are still in the hands of the original owners, or their descendants, and though two or three are occupied by tenants, this should not militate against their residential character. On this side of the railroad the only business house, as we understand the evidence, is the Dunseith garage, which will be considered in an opinion which follows. It would be unwise to permit the extension of these business houses or to permit acts which would ultimately force a change in a restricted locality against the dominant owners' wishes. If these two garages are continued as planned, there is no doubt the premises within a block or two will be affected by the change; they have already felt the effect of the increased use of the one now there, and, gradually, by this process of creeping up, the residential feature will cease to exist and the covenant will be a dead letter. It is such invasions and encroachments that gradually force the home owner in a residential district to surrender the quiet and peace of the home life and seek residence elsewhere. This court has said that, notwithstanding the change of the use of the land and buildings, equity will restrain its violation where the restriction is still of substantial

value to the dominant owner. There may be cases where the restriction has ceased to be of any advantage, and doubtless others will occur. In such cases equity will not interpose and retard improvements simply to enforce the literal observance of a condition or covenant: Landell v. Hamilton, supra.

We are not convinced the appellees' argument on the question of laches, affects the case in the least. Silence will no doubt in a proper case estop a party from afterwards speaking (Orne v. Fridenberg, 143 Pa. 487, 500), but here plaintiffs instituted their action promptly and the offer to sell was not a waiver of their right.

The decree of the court below is reversed, and the bill is reinstated with direction to enter an injunction as prayed for. Appellee to pay costs.