Henry *v.* Eves et al.

Argued December 1, 1931. Before FRAZER, C. J., WALLING, SIMPSON, KEPHART, SCHAFFER, MAXEY and DREW, JJ.

252

George Wharton Pepper, with him James A. Montgomery, Jr., for appellant in No. 392.—The restriction is designed only to prevent the erection of buildings fronting on Delancey Street.

The expression "rear end" by itself is meaningless and indefinite: Wesley v. Sulzer, 224 Pa. 311.

*Henry S. Drinker, Jr.,* with him *Evans, Bayard & Frick,* for appellant in No. 389.—The primary purpose of the restriction was to ensure light and air to the dwellings. By the "rear ends of the lots" was meant that part not covered by the original construction: Dewar v. Carson, 259 Pa. 599; Meigs v. Lewis, 164 Pa. 597.

Furthermore, the mere fact that neither the words "residential" nor "light and air" appear in the restriction is unimportant, for it is the manifest purpose of the restriction which controls, not the use of any particular words therein: Dewar v. Carson, 259 Pa. 299; Garvin & Co. v. County, 290 Pa. 448.

There have been no such violations of the restriction or acquiescence therein as to constitute a waiver thereof or to estop the enforcement thereof: Harmon v. Burow, 263 Pa. 188; Wesley v. Sulzer, 224 Pa. 311; Enders v. Ohle, 6 Pa. D. & C. 796; In re Plastic Club, 7 Pa. D. & C. 50.

Also, acquiescence in a violation does not prevent the beneficiary of a restriction from enjoining a subsequent increase of said violation by the original violator: Garvin & Co. v. County, 290 Pa. 448; Hohl v. Modell, 264 Pa. 516; Phillips v. Dunseith, 269 Pa. 251.

Probably the leading cases on this point are those of Landell v. Hamilton, 177 Pa. 23; Allen v. Hamilton, 177 Pa. 26.

OPINION BY MR. JUSTICE SCHAFFER, January 5, 1932:

Plaintiff, John Norman Henry, in this declaratory judgment proceeding, seeks the settlement of a controversy arising out of a building restriction affecting his property, Nos. 1906-08 Spruce Street, Philadelphia, and the properties of defendants situate on Spruce Street to the west of his. The lots are all 22 or 24 feet front on Spruce Street and extend 185 feet deep to Delancey Street.

John A. Howell and others, who were the owners of the land on Spruce Street now belonging to plaintiff and defendants, on October 4, 1864, conveyed to plaintiff's predecessor in title the property in question restricted as follows: "Under and subject nevertheless to and with the benefit of the following restrictions and agreement viz., that no workshop, steam engine, candle, soap or glue manufactory or other buildings for offensive occupation shall at any time hereafter be erected or placed upon the lot of ground above described or upon the adjoining lot of ground of the said parties of the first part hereto on the west side thereof containing in breadth east and west 88 feet or upon any part of the said lots and that no buildings except stables, coach houses, greenhouses or privies not exceeding two stories in height shall at any time herafter be erected or built upon the rear ends of any of the aforesaid lots fronting on Howell Street and the northernmost three feet of the said lots of ground and also of the ground adjoining lying between the same and 19th Street, extending in all 198 feet along Spruce Street, shall forever remain unbuilt upon or unobstructed except by steps, cellar doors, iron railings or vaults underneath the pavement." At the time of this conveyance the grantors were the owners of 1906 to 1920 Spruce Street. The defendants, James

A. and Marcella D. Babbitt and Annie H. R. Baker Lewis, who oppose the position assumed by plaintiff and who themselves appeal from the decree entered by the court below, as does plaintiff, are the present owners of 1912, 1914 and 1916 Spruce Street, the former of 1912 and the latter of 1914 and 1916.

Plaintiff seeks to erect on his lot a building or buildings fronting on Spruce Street, covering its entire area, with the exception of the three feet immediately adjacent to Spruce Street, and defendants deny his right so to do because of the restriction, claiming that he cannot use any part of the lot in the rear of the dwelling now erected thereon, the rear of which is 120 feet from Howell (now Delancey) Street.

The dwelling adjoining that of plaintiff, being No. 1910 Spruce Stret, extends to a point 60 feet north of Delancey Street (this owner is apparently not contesting plaintiff's right to construct as he seeks to do). The dwelling No. 1912 Spruce Street (belonging to the Babbitts, defendants and appellants) extends to a point 80 feet north of Delancey Street. Nos. 1914 and 1916 in the ownership of defendant and appellant, Mrs. Lewis, extend respectively, the first, three stories high, to within 15 feet of Delancey Street, and the second to within 60 feet thereof, as does the dwelling No. 1918. No. 1920 has an addition which reaches to a point only ten feet from Delancey Street.

The judge who heard the proceeding held that the restriction applies to the entire area of the lots behind the original dwellings erected on Spruce Street, in the case of plaintiff, to all that portion which lies 65 feet south of Spruce Street and extends 120 feet to Delancey; that the restriction creates an easement of light and air; that there has been a partial waiver of the restriction by erections on certain of the lots and that plaintiff may erect a building on his lot extending southward to a point 60 feet north of Delancey Street and of the full width of the lot, but only 30 feet high, where it en-

croaches upon the restricted area, and of unlimited height on the space covered by the original dwelling. The court in banc did not accept the view of the trial judge, but determined that a building may be erected three feet back of the front line on Spruce Street, fronting on that street, of any height, occupying the entire width of the lot, provided that sufficient space be left for the erection of a stable, coach house, greenhouse or privy not exceeding two stories in height upon the rear ends of plaintiff's lots fronting on Delancey Street.

It is to be noted that the first of the deeds from Howell and others, containing the building restriction, that for 1910 Spruce Street contains the following additional provision "And also that the back buildings of the house to be erected upon the said lot of ground above described [1910] and hereby granted shall face to the west. And that the back building to be erected on the lot adjoining thereto on the west [1912] shall face to the east."

We will devote our attention first to the contentions of the appellants, Babbitt and Lewis. They take the position that the primary purpose of the restriction was to insure adequate light and air to the dwelling houses originally erected on the lots. The restriction, however, does not say so and it would have been easy so to provide in apt and certain language had that been the intent in limiting the use which could be made of the land. It was suggested in the argument at bar that the additional provision as to lot No. 1910 was to provide for light and air. It is somewhat significant that no such language was incorporated in the deed for plaintiff's property, as the general restrictions covered all the lots. Meeting plaintiff's position that the only thing the original grantors had in mind was the prevention of objectionable back alley dwellings facing on Howell Street, these appellants say the proper construction of the reservation is that the only buildings which may be erected on the Howell Street ends of the lots are two-

story greenhouses, privies, etc., and the question is propounded why the permitted buildings were limited in height to two stories, unless the purpose of the restriction was to provide adequate light and air. It is asserted that the words "fronting on Howell Street" qualify the preceding words "rear ends of the lots"; that the only reason the phrase "fronting on Howell Street" was inserted in the restriction was to designate which end of the lots was to be considered the rear end, there being no buildings on any of the lots when the restriction was first created, and since without such designation it was impossible to tell which end of the lot was to be considered the rear end, the only reasonable construction is that by the "rear ends of the lots" was meant that part not covered by the buildings contemplated in 1864, all of which were erected immediately thereafter. It is also urged upon us that the fact that there has been acquiescence by other lot owners in infringements of the restrictions ought not to estop the defendants from asserting their rights under them. As we do not turn the case on the proposition of acquiescence, it will not be necessary to consider this contention.

Nor do we deem it essential to give serious thought to plaintiff's argument as to the purpose of the restriction —that it was intended to prevent back alley dwellings on the rear of the lots, although much might be said in favor of the hypothesis. In our view, the restriction violates one of the cardinal principles necessary to sustain a restriction. It is not certain. Just what part of the plaintiff's lot is he prohibited from using? "No buildings except stables, coach houses, greenhouses or privies not exceeding two stories in height shall at any time hereafter be erected or built upon the rear ends of any of the aforesaid lots fronting on Howell Street." Does this mean that buildings may be so built if they do not front on Howell Street or does it mean that the permitted buildings must be built fronting on that street? What does the term "rear ends of any of the

aforesaid lots" embrace? How much of the lots? We think no one can answer these queries save by surmise. It would seem just as reasonable to conclude that the words "fronting on Howell Street" qualify the word "buildings" as "rear ends." What possibly was meant was that no buildings except those named could be built fronting on Howell Street; other buildings could be built on the lot if they did not front on that street, that is to say, other buildings for the owner's use which would have their rears to Howell Street or at least would not independently front on it. It is difficult to answer the contention that the original grantee from Howell could have covered the entire lot with a building if he did not front it on Howell Street. "Rear ends," as applied to the situation before us is certainly a nebulous term. No one can say with firm conviction what it covers. The creators of the restrictions could not have meant that a privy to be erected must front on Delancey Street, yet the language of the restriction would be met if it did and if the owner covered with a building all the rest of the lot except the space necessary for it. Covenants which restrain a man from the free enjoyment of his property must be certain and are not to be extended by implication. In the words of the late Mr. Justice SAD-LER, speaking for the court in Binswanger v. Hyman, 271 Pa. 296, 299: "It must be borne in mind that restraining covenants are strictly construed against the person seeking to enforce them, and all doubts resolved in favor of natural rights and the privilege of the owner to exercise untrammelled control of his own land." "Nothing will be regarded as a violation of [a restriction] that is not in plain disregard of its express words": Crofton v. St. Clement's Church, 208 Pa. 209, 213. See also St. Andrew's Church's App., 67 Pa. 512; Satterthwait v. Gibbs, 288 Pa. 428. As was said by Mr. Justice KEPHART, speaking for the court, in Peirce v. Kelner, 304 Pa. 509, our most recent case dealing with the subject we are considering (pages 515, 516): "Restric-

tions in deeds deal with property rights. They do not arise, nor can they be enforced, unless they appear in express terms. ...... Reservations upon the use of land are never favored by the law; hence it follows that such provisions are never to be extended by implication." Our conclusion is that the uncertainty of meaning of that part of the restriction called in question renders it of no effect. Wesley v. Sulzer, 224 Pa. 311, is a case that comes close to the one at bar, but the distinction is clear. In that case the restriction was against the erection of a building exceeding nine feet in height on the "rear end" of a lot, and it was held that the restriction was not too indefinite to prevent the proposed erection of a five-story brick factory covering the entire lot. There the only uncertainty in the terms of the restriction was the meaning of "rear end," whereas in the present case the whole context of the restrictive covenant leads to doubt and uncertainty too significant to permit its enforcement.

It is further urged upon us that the decree of the lower court was correct at least in providing that sufficient space be left for the erection of the buildings expressly permitted in the restriction. But the obsolete character of these very types of buildings, when contrasted with the requirements and adaptations of present day conditions in this neighborhood, is rather an additional ground for refusing equitable relief. No longer would anyone build a stable, coach house, greenhouse or privy fronting on Delancey Street in this neighborhood, any more than one would put hitching posts on the street or hopping blocks or stands for sedan chairs. Outmoded restrictions must give way to the modern uses of urban property. Authority is abundant that changes in the predominant character of a neighborhood in which property subject to a building restriction is located, whether wrought by the acquiescence of adjacent property owners or by the slow yet resistless evolution of time, may prevent the rigid enforcement of such a re-

striction by a court of equity. See the cases collected in a note in 54 American Law Reports, page 812. As Chief Justice PAXSON said, in Orne v. Fridenberg, 143 Pa. 487, 503: "There is a line of well decided cases which hold that such changes in the neighborhood, the character of the improvements, and the purposes to which they are applied, are sufficient to justify a chancellor in refusing an injunction to restrain violations of building restrictions." And as the present Chief Justice said in Hunter v. Wood, 277 Pa. 150, 152: "Of course if it appears the restriction has ceased to be of advantage to the dominant owner, equity will not lend its aid to enforce the observance of a useless covenant: Landell v. Hamilton, 175 Pa. 327; Phillips v. Donaldson, 269 Pa. 244." Pursuing this line of thought, the vital inquiry here is whether strict enforcement will fail to afford the benefit originally sought, and whether the benefit sought is any longer of practical utility today. "There may be and doubtless will occur cases where the restriction has ceased to be of any advantage. In such cases, equity would not interpose and retard improvements, simply to sustain the literal observance of a condition or covenant": Landell v. Hamilton, supra, at page 337. Where the exigencies of altered conditions in a neighborhood render a strict adherence to the terms of the restrictive covenant useless to the dominant tenement, or absurd, or futile, or ineffective to achieve the end desired, it would be an anachronism to interpose equitable relief in support of it. It can make no substantial difference in the application of this principle whether the change which has been produced is in the physical character of the community or in the utility of particular types of structures as measured by prevalence or habitual use under the new modes of modern civilization.

The decree of the court below is modified by striking out of it the words "and provided also that sufficient space shall be left for the erection of a stable, coach house, greenhouse or privy not exceeding two stories in

height upon the rear ends of said lots fronting on Delancey Street." As thus modified, the decree is affirmed. Costs on this appeal to be divided between the parties.