## Price et al., Trustees, Appellants, *v.* Anderson et al.

210

Argued December 2, 1947. Before MAXEY, C. J., LINN, STERN, PATTERSON and JONES, JJ.

*Robert Dechert,* with him *Theodore Voorhees* and *Barnes, Dechert, Price, Smith & Clark,* for appellants.

*Henry W. Maxmin,* with him *Myron Jacoby,* for appellees.

OPINION BY MR. JUSTICE HORACE STERN, January 5, 1948:

The court below refused to enforce a covenant in a deed which provided that the land conveyed could be used only for dwelling or apartment house purposes. The grantors, owners of the dominant tenement, appeal.

In 1852 Eli K. Price acquired 89 acres of farm land in West Philadelphia extending from what is now Sansom Street on the north to Cedar Avenue on the south and from 45th Street on the east to 50th Street on the west. Parts of this tract have been sold from time to time by the trustees of his estate, which still retains in its ownership, however, a few city blocks or parts of blocks principally along Spruce Street west of 48th Street. By deed dated October 7, 1925 the trustees conveyed to Clarence R. Siegel the lot which is the subject of the present controversy, extending on the easterly side of 48th Street from Spruce to Pine Streets, a distance of

320 feet, and of a depth eastwardly of 188 feet. This deed contained the restriction that "no building to be erected on any part of the said lot of ground shall be less than two stories high and no part of said building shall be used for anything other than dwelling or apartment house purposes unless a single or multiple apartment house covering the whole of said lot and also the lot adjoining it to the east extending to 47th Street shall be erected thereon . . . in which case said apartment house may contain garages for its occupants and theatres, offices and/or shop . . .". Defendant, James M. Anderson,* successor in title to Siegel by deed from an intermediate owner in 1938, is also the owner of the easterly portion of the block between Spruce, Pine, 47th and 48th Streets, this portion being subject to a like restriction imposed by the owner of the block to the east (not the Price Estate). In the sales by plaintiffs of various portions of the original farm restrictions were inserted in the deeds similar to but not identical with that contained in the deed to Siegel, but in a large number of them it was provided that commercial or industrial uses would be permissible if the previous written consent of the grantors, their heirs and assigns, were obtained.

It does not appear when streets were laid out in this section of Philadelphia, but as late as 1925 the surrounding area remained almost wholly undeveloped as far as buildings were concerned. At that time and in the succeeding years several large apartment houses were erected which at present constitute the characteristic feature of that part of the city. In 1927 Siegel, who was then the owner of the entire block between Spruce, Pine, 47th and 48th Streets, by representing that he intended to build a large apartment house thereon with a garage under the central court, obtained permission

---

* There are other defendants named in these proceedings but James M. Anderson has the only real interest and it is he who will hereinafter be referred to as "defendant".

from the owner of the dominant tenement on the east and from the Price Estate on the west to build the garage with stores therein, as allowed by the restrictions in the deeds, without first erecting the apartment house itself; it was agreed between plaintiffs and Siegel that the restriction was not violated thereby. Siegel built the garage consisting of one story and a basement, with a capacity of 400 cars; it has since been in continuous operation but the apartment house of which it was to have been a part has never been built. It occupies almost one half the area of the block, a substantial part of it overlapping the lot conveyed by plaintiffs to Siegel in 1925; its entrance is on Pine Street. Enclosed within its structure are an antique shop toward the Spruce Street side and a tailor shop and a delicatessen store on the Pine Street front.

In 1929 William M. Anderson, defendant's immediate predecessor in title, constructed a large 13-story apartment house called the Garden Court Plaza Apartments on the southeasterly portion of the block, containing 130 apartments and, on the first floor, several stores— a beauty parlor, a drug store, a gown shop, a florist shop, a barber shop, a dry cleaning establishment and a gift shop; some of these front on 47th Street and others on Pine Street.

In addition to the garage and the Garden Court Plaza Apartments there are two other structures on the block. One of these is the so-called "Toddle Shop" in the northeasterly portion 33 feet south of the Spruce Street building line; it is a one-story restaurant building which has been in use since 1939. At the southeast corner of 48th and Spruce Streets some pumps and tanks were installed in 1935 for use as a gasoline service station and were operated as such until 1940 when the station was leased by defendant to the Gulf Oil Corporation; at that time an elaborate one-story structure was erected there under an agreement of June 18, 1940 with the Price Estate wherein permission was given for the erec-

tion of the building, this concession not to operate, however, as a waiver of the restriction. In 1946 title to these premises, 85 feet on 48th Street by 120 feet on Spruce Street, was conveyed by defendant to the Gulf Oil Corporation.

At various times applications have been made to the Bureau of Engineering, Surveys and Zoning for change of classification of portions of the area from residential to commercial. This was done, by ordinances of council, at the instance of the Price Estate itself in 1935 to cover the south side of Spruce Street between 48th Street on the east and Hanson Street on the west and with a depth southwardly of 100 feet, in 1937 to cover the west side of 48th Street from a point 115 feet north of Pine Street a distance northward of 115 feet and in depth 215 feet to Hanson Street, and in 1939 to cover the south side of Spruce Street between Hanson Street and 49th Street with a depth southwardly of 200 feet. Defendant and his predecessor in title also obtained reclassifications from residential to commercial zoning of all the parts of the block between 47th, 48th, Spruce and Pine Streets.

In pursuance of the zoning changes which they had thus obtained and permits granted thereunder, plaintiffs in 1935 erected 11 one-story stores on the south side of Spruce Street between 48th and Hanson Streets which since that time have been continuously operated; they consist of a restaurant and taproom, a 5 and 10 cent store, a children's apparel shop, a vegetable store, a beauty shop, a shoe repair shop, a bakery shop, a butcher shop, a candy store, a delicatessen store and a drug store. Plaintiffs admit that they intend to erect additional stores, if lessees can be obtained therefor, along the south side of Spruce Street between Hanson and 49th Streets. In 1937 they built on 48th Street a large one-story structure, now occupied as an "Acme Super-Market", together with two other stores directly

across from defendant's lot, one a store for the sale of sea food and the other a dry-cleaning establishment.

Defendant now proposes to erect 16 one-story stores extending along the south side of Spruce Street eastward 380 feet from the Gulf Oil station at the southeast corner of 48th and Spruce Streets to the west side of 47th Street. Of course, in these proceedings we are concerned only with those stores which will extend along Spruce Street from the Gulf Oil station to a point 188 feet east of 48th Street, they being the only ones which will be on the property conveyed in the deed from the Price Estate to Siegel. Plaintiffs brought the present bill in equity to restrain defendant from erecting and permitting the operation of these stores as being in violation of the restriction in that deed; the action was instituted on behalf also of all other persons entitled to enforce the restriction and desiring to become parties. The court dismissed the bill.

One of defendant's contentions is that plaintiffs are estopped from enforcing the restrictions because of their having themselves constructed stores on the south side of Spruce Street westwardly from 48th Street and on the west side of 48th Street. He urges that, since the deeds covering the sales of portions of the original farm property contained restrictions against a commercial or industrial use of the tracts conveyed, each grantee had the right to assume that the same restriction would be applied to the then remaining portions, including those which might remain in the ownership of the original grantors, and that the latter would not themselves do anything on their portions that they had forbidden their grantees to do on the parts conveyed. It is true that where there is a definite plan of a real estate development for residential purposes, as shown, for example, by the filing of a map, in pursuance of which numerous conveyances of lots are made containing uniform restrictions, there is presumably created thereby a neighborhood or community scheme that may give

rise to an implied reciprocal covenant on the part of the grantor that he will not thereafter convey any part of the original tract without imposing thereon the same restrictions, and that he will not himself devote the remaining part of the property to the prohibited purposes. But the mere fact that a grantor imposes restrictions on parts of a tract which he sells does not raise any inference that he means thereby to obligate himself to restrict the remainder of his property; in every such case there must appear definite evidence of a purpose to bind the remaining land, and that purpose must be clearly made known to the grantees: CARDOZO, Ch. J. in *Bristol v. Woodward*, 251 N. Y. 275, 283. These principles are fully set forth in *Ladner v. Siegel*, 294 Pa. 360, 144 A. 271, a case involving part of the very city block with which the present litigation is concerned.' In the successive sales of land by the Price Estate there was not apparent any such general scheme of development or uniform improvement, nor any such understanding with the several grantees, as would warrant the implication of a restrictive covenant with respect to the land retained by the Estate. No map or comprehensive plan was ever prepared or publicized; indeed the restrictive covenants in the various deeds, while similar to one another in some respects, were not uniform, and in many of them it was provided that the restrictions imposed could be released if the grantors, their heirs and assigns, consented; where such a provision appears the principles applicable to neighborhood schemes with mutual and reciprocal covenants have no pertinency: *Gibney v. Stockdale Corporation*, 20 Del. Ch. 272, 275-277, 174 A. 117, 119.

While, therefore, it cannot be held that plaintiffs, by building the stores on Spruce Street and on 48th Street, violated any implied covenant on their part whereby they became automatically estopped from enforcing the restrictions in the Siegel deed, the fact remains that the 11 stores on the one street and the large

market and two stores on the other have contributed very largely to the more controlling factor which affects the rights of the parties, namely, the change which has taken place in the character of the neighborhood. So too, while plaintiffs did not bar themselves from obtaining equitable relief merely because they permitted the erection of the service station building and the garage, it being agreed in each instance that the permission granted was to be without prejudice to the continuing enforceability of the covenant, the existence of those buildings and the operations carried on therein have likewise contributed to the transformation of the neighborhood from that of a residential to one of a commercial character. The court below found from the testimony that "There has been a definite change in the predominant character of the neighborhood from residential to commercial uses by reason of the natural forces of demand by the concentrated population, the acts of commission and omission of the plaintiffs and the needs of the community". It is true that from 47th Street eastward, from 49th Street westward, from Spruce Street northward, and from Pine Street southward, the area, subject to some exceptions, remains predominantly residential, but on the block of which the servient tenement is a part there now exist the enormous garage, the stores along Pine Street partly within the garage building and partly within the Garden Court Plaza Apartments, and the "Toddle Shop", antique shop and gasoline station building on the Spruce Street frontage, while on plaintiffs' dominant tenement to the west are the stores along Spruce Street and the large market and other stores on 48th Street directly opposite defendant's property. It is also to be borne in mind that these areas have now been zoned as commercial; indeed, faced with the stores across 48th Street, flanked with the gasoline service station on the property's pivotal corner at 48th and Spruce Streets, and backed by the garage occupying almost the complete central interior

of the block, it is no doubt true, as the court below stated, that defendant's lot is unmarketable for residential use, and that "it is highly improbable that anyone would now venture to build a large apartment house or fine dwelling along Spruce Street or 48th Street on the Anderson tract in close proximity to or facing the various commercial properties the plaintiffs have erected on their property and permitted to be erected on the Anderson tract". It is an elementary principle of equity jurisprudence that such a decided change of conditions makes it improper for a chancellor to enforce a covenant which limits the full right of an owner to develop his property; this is because public policy dictates that land shall not be unnecessarily burdened with permanent or long-continued restrictions and because equity will not retard improvements simply in order to sustain the literal or technical observance of a covenant which for one reason or another has become useless from the standpoint of any practical utility: *Orne v. Fridenberg,* 143 Pa. 487, 503, 22 A. 832, 834; *Phillips v. Donaldson,* 269 Pa. 244, 250, 112 A. 236, 239; *Henry v. Eves,* 306 Pa 250, 259, 260, 159 A. 857, 859, 860; *Peoples-Pittsburgh Trust Co. v. McKinley-Gregg Automobile Co.,* 353 Pa. 110, 44 A. 2d 295; Restatement Property, §564. In considering whether a "neighborhood" is residential, the test is the immediate, not the remote, neighborhood: *Mitchell v. Guaranty Corporation,* 283 Pa. 361, 364, 129 A. 114; *Unger v. Edgewood Garage,* 287 Pa. 14, 18, 134 A. 394, 396; *Burke v. Hollinger,* 296 Pa. 510, 520, 146 A. 115, 117; *Calvary Presbyterian Church of Highland Park v. Jones,* 322 Pa. 77, 80, 185 A. 267, 268. Under the conditions now existing there are no occupants of residences or of apartment houses surrounding the servient tenement in this case who could be adversely affected or in the slightest degree annoyed by defendant's proposed construction of stores along the south side of Spruce Street, across from which is only the Philadelphia College of Osteopathy and Osteopathic Hospital. It is sig-

nificant that no "neighbors", plaintiffs' grantees, have joined in these proceedings.

Confronted with the situation thus described plaintiffs have conceived and presented for the consideration of the court what may fairly be characterized as a unique theory for the support of their position. They point to the phrase which has frequently been proclaimed, that where a building restriction is still of *substantial value* to a dominant lot notwithstanding changes in the use of the land and buildings or in neighborhood conditions, equity will restrain its violation: *Landell v. Hamilton,* 175 Pa. 327, 337, 34 A. 663, 666; *Hohl v. Modell,* 264 Pa. 516, 519, 107 A. 885, 886; *Phillips v. Donaldson,* 269 Pa. 244, 250, 251, 112 A. 236, 239; *Hunter v. Wood,* 277 Pa. 150, 152, 120 A. 781, 782; *Benner v. Tacony Athletic Association,* 328 Pa. 577, 581, 196 A. 390, 392, 393; *Todd v. Sablosky,* 339 Pa. 504, 508, 15 A. 2d 677, 679. Seizing upon the words "substantial value", plaintiffs claim that, regardless of whatever changes have occurred, the restrictive covenant remains of real value to them because it enables them to retain the control of commercial uses as an asset enhancing the rental and sale value of their presently unsold property, and true it is that, if they can have the sole and unrestricted right to erect and lease store properties on the tracts retained by them and can prevent defendant from erecting stores which would compete with those now erected and that may hereafter be erected on their own retained land, such a monopoly might well constitute a valuable right. But that is not the kind of value to which the applicable principle of equity relates. The value referred to in the authorities is the benefit to the owner of the dominant tenement in the "physical use or enjoyment of the land possessed by him": Restatement Property, §537. "It [the restrictive covenant] must in some way make the use or enjoyment more satisfactory to his physical senses. It is not enough that the income from it is increased by

virtue of it. Thus a promise that land of the promisor will not be so used as to compete with a business carried on upon the land of the promisee does not so affect the land of the promisor that it can be made to run with it": Restatement Property, §537, comment f. Indeed, it is the well-known policy of the law not to sanction or enforce agreements aimed to prevent competition except in certain special cases, as where there is the sale of a business or of a professional practice. Nor was it in fact the intent and purpose of the restriction here in question to secure to the Price Estate any such advantage. The language of a deed must always be interpreted in the light of the apparent object or purpose of the parties and of the conditions existing when it was executed: *Murphy v. Ahlberg*, 252 Pa. 267, 269, 97 A. 406; *Dewar v. Carson*, 259 Pa. 599, 603, 103 A. 343, 344; *Rabinowitz v. Rosen*, 269 Pa. 482, 484, 485, 112 A. 762, 763; *Drucker v. Russell*, 279 Pa. 443, 448, 124 A. 92, 93; *Garvin & Co., Inc. v. Lancaster County*, 290 Pa. 448, 451, 452, 139 A. 154, 155. While, as previously stated, the several conveyances of the original farm property were not made in pursuance of any such definite improvement scheme as would fasten upon the grantors the obligation to provide a uniform system of restrictions binding both themselves and all their grantees, it is quite clear that the general purpose of the restrictions placed in the various deeds was to prevent the unsightly appearances, discordant sounds, offensive odors, objectionable smoke and fumes, and deprivation of light and air, which are always likely to result from an intrusion of commercial and industrial pursuits; the restrictions were not intended as a means of gaining for the grantors a monopoly with respect to the business enterprises that might be introduced into the area.

Inasmuch, therefore, as plaintiffs may not enforce the restriction because of any claimed economic or pecuniary value thereof, and inasmuch as its value from

the physical standpoint has disappeared because of the neighborhood changes, the court below properly concluded that injunctive relief should be denied, it being obvious that the harm that would be done to defendant by granting an injunction would be grossly disproportionate to any legally permissible benefit that would result to plaintiffs.

Decree affirmed; costs to be paid by plaintiffs.