## Katzman et al. *v.* Anderson et al., Appellants.

Argued April 20, 1948. Before MAXEY, C. J., DREW, LINN, STERN, PATTERSON, STEARNE and JONES, JJ.

*Henry W. Maxmin*, with him *Myron Jacoby*, for appellants.

*Samuel J. Gottesfeld*, with him *M. Murray Schwartz* and *Nathan J. Schneider*, for appellees.

OPINION BY MR. JUSTICE HORACE STERN, May 24, 1948:

The opinion in the case of *Price v. Anderson*, 358 Pa. 209, 56 A. 2d 215, recites many of the facts and much of the law upon which the determination of the present controversy depends.

The block in Philadelphia bounded on the east by 47th Street, on the west by 48th Street, on the north by Spruce Street, and on the south by Pine Street, extends 500 feet from east to west and 320 feet from north to south. Drawing a line from north to south at a point 188 feet east of 48th Street and 312 feet west of 47th Street, the westerly portion of the block as thus divided constitutes the tract which figured as the servient tenement in the *Price* case (hereinafter referred to as the Price servient tract), while the easterly portion constitutes the servient tenement in the present proceedings (hereinafter referred to as the Siegel servient tract). The dominant tenement in the *Price* case was the block to the west of 48th Street; the dominant tenement in the present case (which will hereinafter be referred to simply as the dominant tenement) is a lot at the northeast corner of

47th and Pine Streets, extending 180 feet north on 47th Street and 385 feet east on Pine Street.

On December 26, 1922 Clarence R. Siegel, who was then the owner of both the dominant tenement and the Siegel servient tract, conveyed the latter to I. Clarence Pennington under and subject to certain restrictions recited in the deed, and Pennington immediately reconveyed the tract to Siegel under and subject to the same restrictions. These restrictions provided that "there shall not be at any time hereafter erected or used on the above described lot of ground or on any part or parts thereof any stable, public garage, or any building for manufacturing purposes or offensive occupations; and that the character of buildings to be erected thereon shall be limited exclusively to private dwellings, private dwellings with private garages, apartment house or apartment hotel, which shall be in style and nature suitable and in conformity with the surrounding neighborhood".

During the year 1923 Siegel built on the dominant tenement a six story multiple apartment house known as Garden Court Apartments, which covered the entire area of the lot and which has ever since been operated as an apartment house. Plaintiffs have succeeded to the ownership of this property. At the time of the creation of the restrictions in the deed to Pennington, the entire block between 47th and 48th Streets and between Spruce and Pine Streets was virgin land and the object of the restrictions was obviously to preserve it for residential purposes and to prevent industrial and commercial encroachments thereon. What happened, however, was that in 1927, Siegel, who had meanwhile become the owner of the entire block, intending, but never carrying out the intention, to build a large apartment house thereon enclosing a garage under the central court, built merely the garage. The main portion of this garage is in the center of the block, rising one story above the ground with an underground floor for the storage of cars; it fronts 120 feet on the north side of Pine Street

with a 95 foot entrance way; immediately within is a vestibule extending to the north for about 85 feet and then the garage proper widens out to 263 feet (partly overlapping the Price servient tract) and extends further north 161 feet, the portion contained in the Siegel servient tract covering over 40 percent thereof; the garage has a capacity of over 400 cars and enclosed within its structure are an antique shop toward the Spruce Street side, and a tailor shop, a gift shop and a delicatessen store on the Pine Street front.

In 1929 William M. Anderson, the immediate predecessor of defendant James M. Anderson[1] as owner of both the Price and the Siegel servient tracts, constructed a large thirteen story apartment house called Garden Court Plaza Apartments at the southeast corner of the block, extending 190 feet west on Pine Street and 83 feet north on 47th Street. This apartment building contains several stores on the first floor—a beauty parlor, a drug store, a gown shop, a florist shop, a barber shop, a dry-cleaning establishment and a gift shop;—some of these front on 47th Street and others on Pine Street.

In addition to the garage and the Garden Court Plaza Apartments there are at present two other structures on the block. One of these is the so-called "Toddle Shop" 33 feet south of Spruce Street and 117 feet west of 47th Street; it is a one story restaurant building that has been in use since 1939. At the northwest corner, within the Price servient tract, there is an elaborate structure used as a gasoline service station and now owned by the Gulf Oil Corporation; it occupies a lot 85 feet on 48th Street and 120 feet on Spruce Street. All the remaining portions of the Price servient tract have, by the decision of this Court in *Price v. Anderson*, 358 Pa. 209, 56 A. 2d 215, been freed from the Price restrictions, and stores will be built in the immediate future along the south side

---

[1] There are other defendants named in this action but apparently James M. Anderson has the principal interest therein, and it is he who will hereinafter be referred to as defendant.

of Spruce Street and the east side of 48th Street, so that the entire area of the Price servient tract will be occupied by commercial structures. The result is that, when the block is viewed as a whole, it is now, or is about to become, covered by buildings to the extent of at least 73 percent of its entire area, of which 63 percent is for business purposes.

What defendant now intends is to erect on part of the remaining 27 percent of the block a solid row of twelve stores,[2] each consisting of one story and basement and extending along the south side of Spruce Street west from 47th Street; of these, nine will be of a depth of 76 feet to a rear driveway paralleling the north wall of the garage,[3] and three of the stores, being those between 47th Street and the east wall of the garage, will have a depth of 125 feet, thereby bringing them southward to a point opposite the north line of the dominant tenement. This will complete the coverage of the entire block except for a portion approximately 100 feet along 47th Street and of a depth westward of 117 feet, directly across from the dominant tenement. To complete the statement of facts it may be added that, as a result of amendments of the zoning ordinances which have been made from time to time, the entire block has been reclassified as a commercial instead of a residential district.

Plaintiffs brought a bill in equity to enjoin the proposed construction of these stores and the court below entered a decree awarding such an injunction, from which decree defendant now appeals.

The principles of equity determinative of the issue here presented are entirely clear but necessarily general in character, and they require discrimination, therefore, in their application to the facts of each case. Notwithstanding that there may have occurred changes in the

---

[2] There will be sixteen stores in all, but four of them will be situated on the Price servient tract.

[3] The "Toddle Shop" is to be torn down to make way for one of these stores.

character and use of lands and buildings in the neighborhood, equity will restrain a violation of a building restriction if its enforcement remains of *substantial* value to the dominant tenement: *Landell v. Hamilton*, 175 Pa. 327, 337, 34 A. 663, 666; *Hohl v. Modell*, 264 Pa. 516, 519, 107 A. 885, 886; *Phillips v. Donaldson*, 269 Pa. 244, 250, 251, 112 A. 236, 239; *Hunter v. Wood*, 277 Pa. 150, 152, 120 A. 781, 782; *Benner v. Tacony Athletic Association*, 328 Pa. 577, 581, 196 A. 390, 392, 393; *Todd v. Sablosky*, 339 Pa. 504, 508, 15 A. 2d 677, 679; *Price v. Anderson*, 358 Pa. 209, 219, 56 A. 2d 215, 220. On the other hand, equity will *not* enforce a restriction if the nature of the neighborhood changes has been such as to make it impossible to accomplish the objects for which it was designed, even though such changes may have resulted from circumstances over which neither of the parties had any control. It being a general policy of the law that land shall not be burdened with permanent or long-continued restrictions which have ceased to be of any advantage, equity will not, in such cases, prohibit or retard improvements simply to enforce the literal observance of a condition or covenant. Nor will equity grant injunctive relief if the enforcement of a restriction would make the land unfit or unprofitable for use and development, or result in a far greater hardship to the servient than a benefit to the dominant tenement. These principles of equity jurisprudence have been proclaimed in many cases: *Orne v. Fridenberg*, 143 Pa. 487, 503, 22 A. 832, 834; *Landell v. Hamilton*, 175 Pa. 327, 337, 34 A. 663, 666; *Phillips v. Donaldson*, 269 Pa. 244, 250, 251, 112 A. 236, 239; *Hunter v. Wood*, 277 Pa. 150, 152, 120 A. 781, 782; *Henry v. Eves*, 306 Pa. 250, 259, 260, 159 A. 857, 859, 860; *Peoples-Pittsburgh Trust Co. v. McKinley-Gregg Automobile Co.*, 353 Pa. 110, 44 A. 2d 295; *Price v. Anderson*, 358 Pa. 209, 218, 56 A. 2d 215, 220; Restatement, Property §537, and comment h; §563; §564 and comment c. In *Henry v. Eves*, supra, it was said (p. 260, A. p. 860) "Where the exigencies of altered con-

ditions in a neighborhood render a strict adherence to the terms of the restrictive covenant useless to the dominant tenement, or absurd, or futile, or ineffective to achieve the end desired, it would be an anachronism to interpose equitable relief in support of it".

In the light of these controlling rules, what is the situation in the present case? Undoubtedly the original purpose of Siegel in imposing the restrictions on the block west of 47th Street was for the benefit of the apartment house which he was then engaged in erecting on the east side of that street,—to preserve for it the physical and æsthetic advantages accruing from the proximity of residential rather than commercial structures. But that purpose has been almost completely frustrated; not only has three-quarters of the block been covered by the Garden Court Plaza, the extremely large garage, the gasoline station, and several stores to which a number are about to be added on the Price servient tract, but it happens that the stores which defendant now proposes to erect are in a portion of the block by which plaintiffs are, from a physical standpoint, least adversely affected.[4] Spruce Street is a wide thoroughfare with a double line of trolley tracks and with considerable traffic as a through highway; the proposed stores along its southern side will scarcely, if at all, effect any change in existing conditions of pedestrian or vehicular traffic, nor, as already stated, will they extend down 47th Street to any point directly opposite the dominant tenement.[5] That there would be any substantial benefit to plaintiffs, therefore, in the enforcement of the restriction is extremely doubtful, whereas the hardship to defendant would be enormous because the place where the stores

---

[4] The northeasterly part, at the southwest corner of 47th and Spruce Streets, was devoted for many years to the commercial operation of public tennis courts.

[5] The lot which extends 140 feet along the east side of 47th Street south from Spruce Street, and which is therefore directly across from the easternmost of the proposed stores, is not, and never was, a part of the dominant tenement.

are to be erected is utterly unfit for residential purposes,—certainly for residences of the type existing in some of the surrounding blocks; the space between the south house line on Spruce Street and the north wall of the garage is but 85 feet, which would hardly permit of desirable residences being erected there; there would be no adequate room for yards, much less lawns or other open spaces; moreover, any such houses would be flanked by the gasoline station and the stores now permitted to be built on the Spruce Street frontage of the Price servient tract. The portion of the block in question being unmarketable, therefore, for residential development, its entire value would be lost to defendant if he could not use it for the only purpose for which it is now adapted. In short, the Court is of opinion that, if the covenant were to be specifically enforced, there would be such a gross disproportion between any possible benefit that would accrue to plaintiffs and the harm that would certainly be done to defendant, that equity, in accordance with the principles previously stated, should not, under the circumstances, grant the injunctive relief which plaintiffs seek.

Decree reversed and bill dismissed; the parties to bear their respective costs.