## Ellis v. Dubin

780

*Rubin Cohen*, for petitioners.

*Charles L. Guerin, Jr.*, and *W. Joseph Harrison*, for respondents.

FLOOD, J., May 20, 1958.—Petitioners own vacant ground on a tract which is subject to a deed restriction prohibiting the erection of any building "except for use as a private dwelling". They seek a declaratory judgment or decree to the effect that duplex-type dwellings may be constructed on the lot notwithstanding the terms of the restriction, which it has been held prohibit such use. See Fox v. Sumerson, 338 Pa. 545 (1940); Taylor v.. Lambert, 279 Pa. 514 (1924). Compare Hamnett v. Born, 247 Pa. 418 (1915), and Johnson v. Jones, 244 Pa. 386 (1914).

The petition alleges: (1) That the object of the restriction has failed in that portions of the tract and the surrounding areas have been developed for commercial purposes; (2) that duplex-type dwellings are the only feasible and economical construction which will preserve in part the object of the restriction; (3) that the restriction has ceased to be an advantage to the dominant tenants; and (4) that enforcement of the restriction would prohibit use of the land for the purposes which the character of the neighborhood requires.

Respondents, most of whom own private dwellings on the same tract, deny the allegations of the petition.

They allege: (1) That the object of the restriction has been accomplished in the creation of an outstanding residential district having no commercial uses whatever; (2) that there has been no change in the character of the neighborhood rendering unattainable the object of the restriction; and (3) the restriction continues to be of substantial value to them. Under the heading of new matter, respondents also allege that the issue raised here already has been adjudicated adversely to petitioners by the Common Pleas Court No. 2 of Philadelphia County in Edel v. Duffy and Gormley, September term, 1930, 8872. In 1934 a decree was entered in that case enjoining certain defendants from maintaining a gasoline service station on a different portion of the same tract which is involved here. In 1937 a rule to show cause why the decree in that case should not be modified was discharged.

The tract upon which this restriction was imposed is part of a large roughly triangular piece of ground with its apex at Oxford Circle on the Roosevelt Bouvelard and extending southward between Castor Avenue and Oxford Avenue, which intersect at the Circle, to Pratt Street. Between Castor Avenue on the west and Oxford Avenue on the east, the tract is cut, from east to west in order southward, by Sanger Street, Bridge Street, Granite Street and Pratt Street and from north to south by Rutland Street which runs parallel to Castor Avenue from a point between Sanger and Bridge Streets to Pratt Street and beyond. The tract involved here is encompassed by Sanger and Bridge Streets, Castor and Oxford Avenues. A small triangular lot on the southeast corner of it is cut off from the main portion of the tract by Rutland Street. This small lot, which was the subject of the litigation in the Edel case, mentioned above, is now improved and is owned by one of the respondents. The remaining respondents own improved lots on the tract which face Bridge

Street and Castor Avenue. Petitioners' vacant ground fronts on Rutland Street, Oxford Avenue and Sanger Street. It is immediately adjacent to the rear boundaries of the lots facing Bridge Street and Castor Avenue.

From the pleadings it appears that the large triangular piece of ground described above was once entirely owned by Louis Burk. In 1915 he conveyed the relatively small lot north of Sanger Street which forms the apex of the triangle without restriction limiting use to private dwelling purposes. In 1918 he conveyed the tract here in question subject, among others, to the restriction recited above. In 1924 he conveyed the base of the triangle, bounded by Bridge Street on the north and Pratt Street on the south, creating a restriction which is identical to the restriction imposed on the tract which is before us.

The precise character of the immediate neighborhood when the restriction was imposed in 1918 is not disclosed by the record. Presumably, most of it, like the tract itself, was vacant ground. E. Fred Kemner, a realtor who has been active in the northeast section of the city since 1922, and who appeared as a witness for petitioners, testified that he was familiar with the section and examined the tract in question in 1932, when the owner offered it to his office for purposes of sale. In the 1920's, he testified, the east side of Oxford Avenue generally had a pattern of commercial use, the west side residential. Some of the buildings on the east side, which had been constructed as dwellings, subsequently were converted to commercial uses, so that the east side of Oxford Avenue from Pratt Street to the Boulevard now is nearly all commercial. He also testified that vehicular traffic on Oxford Avenue today is much heavier than in the 1920's.

The opinion of Common Pleas Court No. 2 in the earlier case, which is attached to respondents' an-

swer as an exhibit, indicates that the lot north of Sanger Street, which is across the street from petitioners' lot, has been occupied by a gasoline service station since at least 1934. That opinion also shows that the tract to the south, between Bridge and Pratt Streets, which was conveyed in 1924 subject to an identical restriction had been partially developed for private dwelling use by 1934. The lots owned by respondents which face Bridge Street and Castor Avenue contain twin-type dwellings which were erected in 1929. A single house and garage owned by one of respondents, which was constructed comparatively recently, now occupies the small triangular lot which was involved in the prior litigation.

Although more fully developed now, the general character of the immediate neighborhood is similar to what existed, according to Mr. Kemner, in the 1920's. The most substantial changes appear to be the following: Oxford Avenue has become a well-traveled highway 100 feet wide which serves as a traffic artery between a business hub at Frankford Avenue to the south and the Roosevelt Boulevard at the Oxford Circle. Bus transportation has recently superseded trolley transportation. The commercial development on the east side of Oxford Avenue, opposite petitioners' vacant lot, has come to include several uses, a cafe or taproom and two automobile sale and service businesses, which are not considered to be the most desirable commercial uses. Finally, on the tract itself four dwellings are now used in violation of the restriction as combination medical offices and dwellings. See Haskell v. Gunson, 391 Pa. 120 (1958). Three of these uses are on corner properties of the tract; the other is on the triangular lot upon which gasoline service station use previously had been enjoined. Similar combination office-dwelling uses exist on the west side of Oxford Avenue south of Bridge

Street apparently in violation of the restriction imposed on that tract.

With respect to the undeveloped lot owned by petitioners, Mr. Kemner testified in effect that development for single family dwelling use was now impracticable because of the changed conditions on the east side of Oxford Avenue. He further stated that land on arterial highways is not generally purchased for single family use because the purchasers of such dwellings, who normally have growing children or large families, tend to select available houses situated on less traveled streets where traffic hazards and the noise of public transportation and trucks is less likely seriously to interfere with the raising of children and the "complete family living" which such persons contemplate. He testified that the resulting doubtful market for such dwellings on this location constitutes an additional hazard over and above the usual hazards which builders normally will assume regardless of the cost of the land. As to the possibility of selling individual lots to persons who would construct unrelated single family dwellings, Mr. Kemner testified that such development appeared to him to be impractical because the purchasers could acquire the same amount of ground in a protected area for less money, and the owner, upon subdividing the lot, would incur the risk of not being able to dispose of the balance of the ground.

Mr. Kemner also testified that twin-type duplexes, which apparently are contemplated here, have the same appearance from the rear as twin-type single family dwellings and that they may be indistinguishable in front, depending upon the style of architecture employed. He also indicated that unlike single family dwellings there was a ready market for duplex-type dwellings at this location because the occupants of such dwellings, who normally have small families

and no children, prefer locations near stores and transportation. Finally, while the cost figures submitted by him show that duplex-type development as opposed to single family development, could be accomplished profitably here, the profit is small as compared to that which could be realized by commercial development in accordance with the present zoning of the lot.

1. Respondents contend that evidence of conditions outside the area covered by the restriction was improperly admitted over objection and should not be considered by the court. In actual fact petitioners' lot, fronting as it does on an arterial highway where it faces completely developed commercial establishments, differs radically from the properties on the rest of the tract, most of which face quiet, private, residential streets. While the changed conditions on Oxford Avenue might be considered irrelevant, as constituting parts of the "remote" rather than the "immediate" neighborhood, were we investigating only the character of the Bridge Street and Castor Avenue portions of the tract, we must consider the tract as a whole. Certainly this statement cannot validly be made with respect to the portion of the tract facing Oxford Avenue which is under consideration here. We think that changed conditions outside the physical boundaries of a restricted tract which directly and immediately affect or influence the character of a portion of it, must be considered under the cases cited below in determining whether the objects for which the restriction was designed may still be accomplished, or whether enforcement of it would render such portion unfit or unprofitable for use, or would result in a far greater hardship to it than a benefit to the dominant tenement.

2. Respondents next contend that Mr. Kemner's testimony concerning the absence of any market for single family dwellings at this location is refuted by

the following facts: (1) People presently live in private homes all along the west side of Oxford Avenue, some of which obviously are quite new; and (2) Dr. Mulherin recently built a single residence on the triangular lot which is part of the restricted tract and which directly adjoins Oxford Avenue. While the evidence shows that the west side of Oxford Avenue is entirely residential, the record is silent respecting the dates when such dwellings were constructed, and Mr. Kemner specifically testified that the private residential uses formerly existing there have given way generally to combination office-dwelling uses which also violate the restriction. In the absence of evidence we may not assume that a substantial number of these dwellings were erected recently, that the conditions opposite them when they were constructed were similar to those presently existing opposite petitioners' lot and that, contrary to the evidence, the uses there continue to be principally private dwelling uses. As for Dr. Mulherin's lot and residence, this too violates the restriction, and as Mr. Kemner testified, cannot be considered similar to petitioners' lot because no problem of subdivision was involved there. In sum, we have no evidence that any home has been erected on this tract in accordance with the restriction since 1929.

We think that the record tends to corroborate and support Mr. Kemner's expert testimony rather than refute it. Since his testimony is uncontradicted, we see no alterantive under the circumstances but to accept his expert opinion. If the evidence disclosed that development subject to the restriction was economically feasible, the restriction would not be declared invalid even though the proposed use offered prospects of larger profits and would not interfere seriously with respondents' enjoyment of their properties. But the credible, uncontradicted testimony discloses that the restriction presently can be enforced on

the entire tract only by entirely sacrificing use and development of petitioners' ground. Strict enforcement of the restriction under such circumstances is unjust and inequitable and a court of equity will not lend its aid for such purpose. See e.g., Katzman v. Anderson, 359 Pa. 280, 284 (1948).

The court should not allow a violation of a restriction in a deed for the benefit of neighboring property owners unless its continuance involves such a large sacrifice to the servient owner and the benefit to the neighboring owners is relatively so small that it would be inequitable to enforce it strictly. Mere loss of the most profitable use of the land or inconvenience to the servient owner is not enough to move the court to set aside the restriction. Where, however, as here, it is shown that the owner could not make any valuable use of his land if the restriction is continued, the situation is different. This property can be profitably developed only by duplex dwellings, apartments or some commercial use. The evidence indicates that the least profitable of these uses is duplex dwellings, which is at the same time least objectionable from the standpoint of the neighbors. This distinguishes this case from the Edel case, supra, in which Judge Gordon refused to sanction a gasoline service station on this tract. This seems to be a proper development of the tract and we approve it. The evidence is that these houses will be esthetically little less desirable than twin houses. Under our economic system, the property value of defendants should not be destroyed for the relatively small benefit accruing to plaintiffs from the strict enforcement of this restriction. The guiding principle is laid down by the Supreme Court in the case of Katzman v. Anderson, 359 Pa. 280 (1948), at 285:

"It being a general policy of the law that land shall not be burdened with permanent or long-continued restrictions which have ceased to be of any ad-

vantage, equity will not, in such cases, prohibit or retard improvements simply to enforce the literal observance of a condition or covenant. Nor will equity grant injunctive relief if the enforcement of a restriction would make the land unfit or unprofitable for use and development, or result in a far greater hardship to the servient than a benefit to the dominant tenement." See also Rome v. Rehfuss, 391 Pa. 82 (1958); A.L.I. Restatement of the Law of Property, §§ 537, 563, 564.

The prayer of the petition is granted. The parties may submit a decree in accordance with this opinion.

### Opinion Sur Exceptions

FLOOD, J., November 3, 1958.—The court en banc affirms the decision of the trial judge in this case. Little need be added to his opinion which sets forth the pleadings, issues and evidence.

Respondents contend that the trial judge erred in considering evidence of the relative desirability of duplex dwellings on the lot in question, citing Bennett v. Lane Homes, Inc., 369 Pa. 509, 517 (1952). In the cited case the nondesirability of an apartment house was held to be irrelevant in determining the scope or interpretation of the language in the deed. In the case before us the evidence was not offered or considered as bearing on the proper interpretation of the deed. Petitioners conceded that the language of the deed prohibits the construction of duplex dwellings. They sought to prove that equity nevertheless should not enforce strict compliance with the restriction because: (1) The restriction had ceased to be of any real advantage to respondents; (2) enforcement of it would render petitioners' lot totally unfit or unprofitable for development; and (3) enforcement of it would result in a far greater hardship to the servient than a benefit to the dominant tenement. See Katzman v. Anderson, 359 Pa. 280, 285 (1948).

Petitioners submitted competent evidence tending to prove that strict enforcement of the restriction would render their lot totally unfit or unprofitable for development. Under these circumstances evidence of the relative desirability of the particular use proposed by petitioners was admissible as tending to show the lack of substantial benefit to respondents from an enforcement of the restriction against such use. The relative desirability of the proposed use, as contrasted with other possible profitable uses, therefore, clearly was relevant in the determination of the whole controversy.

Respondents next contend, correctly we think, that the records of the zoning division were not admissible to show uses in existence or changes in uses on the tract or in the surrounding neighborhood. However, the only finding based in whole or in part on such evidence is the following finding covered by respondents' fourth exception: That four dwellings on the tract itself are now used as combination medical offices and dwellings in violation of the restriction. Since the evidence with respect to three of these dwellings is legally insufficient to support the finding, we have excluded consideration of this fact in affirming the decision of the trial judge.

Contrary to respondents' contentions the record tends to support Mr. Kemner's expert testimony concerning the impracticability from an economic standpoint of constructing private dwellings on the unimproved balance of the tract owned by petitioners. Under the circumstances and in the absence of any evidence impeaching this testimony, we may not disregard it capriciously. The fact that duplex dwellings may be erected profitably does not prove or raise any presumption that the tract could be developed for private dwelling purposes without substantial loss to the owner.

The decision in the present case does not conflict

790

with our decision in Schofield v. Byrd, C. P. 6, June term, 1951, no. 1665, decided by Judge Levinthal in 1952. There the entire tract subject to the deed restriction had been improved by the construction of private dwellings 23 years earlier. The owners of two dwellings, whose situation was not substantially different from that of other owners, made structural changes on the exterior of their dwellings for the purpose of converting them into duplex-dwelling or combination office-dwelling uses. The commercial development of a nearby street, which intersected the street on which the parties' lots were located, had not affected adversely the restricted tract, and enforcement of the restriction did not render defendants' lots unfit or unprofitable for use or result in a far greater hardship to them than a benefit to plaintiffs.

Respondents' fourth exception is sustained and their remaining exceptions are dismissed.

The decree of the trial judge is confirmed.