## Ryan et ux. v. Morris et ux.

*Lutz, Fronefield, Warner and Bryant,* for plaintiffs.
*Reilly & Pearce,* for defendants.

MacDade, P. J., December 29, 1947.—Plaintiffs have filed a complaint against defendants to restrain the latter from maintaining a fence on their land. The parties litigant are adjoining property owners on the north side of State Road in Drexel Hill, Upper Darby Township. The land of defendants as well as that of plaintiffs was part of a tract of ground conveyed by John C. Herrmann et al. to John C. Herrmann, John H. Goehring, S. C. Abernathy, Helen P. Fennell, trading as Aronimink Heights Company, by deed dated January 14, 1924. This deed imposed a restrictive covenant whereby that tract of ground, including the lands of plaintiffs and defendants, was subject to a restrictive covenant which provided, inter alia:

"No wall or fence of any kind except a fence of iron-work and not over 4' high shall be constructed or maintained on any part of the premises but hedges of living plants may be grown thereon, but must be kept trimmed so that no part thereof shall at any time exceed 6' in height; and no such fence or hedge shall extend further front on said premises than the front building line thereof . . . No such dwelling house or any part thereof . . . shall be erected or maintained nearer to the front of the lots on which it is erected than 35' from the curb line."

On May 11, 1946, when plaintiffs learned that defendants planned the erection of a fence on their premises, a formal notice in writing referring to the building restrictions of record and registering plaintiffs' objection against any violation was given to defendants.

Thereafter, on July 27 and 28, 1946, defendants, notwithstanding said notice, erected a wooden fence more than four feet in height along the line separating the lands of plaintiffs from the lands of defendants to a point 10 feet 6 inches from the curb line of State Road.

To plaintiffs' bill of complaint an answer was filed together with new matter by defendants, and then plaintiffs, in turn, submitted an answer to new matter. Testimony was taken on November 6, 1946, before the writer.

From the record, pleadings and testimony, the court makes the following:

### 2. Findings of fact

1. That plaintiffs, by deed dated March 10, 1944, and recorded in the Office for the Recording of Deeds in and for Delaware County, Pa., in Deed Book 1231, page 536, etc., are the owners of:

"ALL THOSE CERTAIN lots or pieces of ground with the buildings and improvements thereon erected, SITUATE in Aronimink Heights, Upper Darby Township, Delaware County, Pennsylvania, and described according to survey and plan thereof made on November 1, A. D. 1926, by Damon and Foster, Civil Engineers, as follows, to wit:

"SITUATE on the Northwest side of State Road (fifty feet wide) at the distance of fifty feet Northeast of Concord Avenue (forty feet wide). CONTAINING in front or breadth on said State Road fifty feet and extending of that width in length or depth Northeastward between lines parallel with said Concord Avenue

one hundred and fifty feet. BEING Lots 93 and 94. House No. 3807 State Road."

2. That defendants are the owners of the premises adjoining those of plaintiffs to the northeast.

3. That the premises of plaintiffs and defendants are subject to the following building restrictions:

"Not more than one house shall be erected on each 50′ of frontage or one pair of semi-detached house on each 75′ of frontage. No wall or fence of any kind except a fence of ironwork and not over 4′ high shall be constructed or maintained on any part of the premises but hedges of living plants may be grown thereon, but must be kept trimmed so that no part thereof shall at any time exceed 6′ in height; and no such fence or hedge shall extend further front on said premises than the front building line thereof. No buildings other than detached dwelling houses to cost not less than $8500.00 to build shall be constructed or maintained on any lot or group of lots fronting on State Road (except on lots West of Concord Avenue) and no lots fronting on State Road shall be subdivided to front on any intersecting streets. No buildings other than detached dwelling house to cost not less than $7000.00 to build shall be constructed or maintained on any lots fronting on Edmonds Avenue and no buildings other than detached dwellings costing not less than $6000.00 each to build or semi-detached dwellings to cost not less than $11,000.00 or $12,000.00 per pair to build shall be constructed or maintained on any lots fronting on Concord, Ormond, Mason and Cedar Avenues. No dwellings shall be erected to front on Cedar Lane or Bond Avenue. No building erected on the premises shall at any time be used for any dangerous or offensive purposes or occupation. Provided—garages may be erected in accordance with hereinafter recited restrictions. No such detached dwelling house shall be constructed or maintained on any property of less than 50′ in frontage, and no such semi-detached houses shall be

constructed or maintained on any property containing less than 75′ in frontage for each pair of semi-detached dwellings. All dwellings must have cellars, must be at least two stories in height above the cellar and must not be of the type commonly known as flat roof houses; provided that bungalows of a type approved in writing by Aronimink Heights Company may be erected on lots sold by it. No such dwelling house or any part thereof, except porches or bay windows, shall be erected or maintained nearer to the front of the lots on which it is to be erected, than 35′ from the curb line and no portion of any such dwelling shall be erected or maintained within 7′ of side party lines nor within 25′ of side street lines; and no porch shall extend more than 10′ beyond the said 35′ lines herein established. No such dwelling houses shall be built, constructed or maintained upon any part of the portion of said tract covered by these restrictions and limitations until after the plans and specifications therefor have been submitted to and approved by the said Aronimink Heights Company and its successors. Garages for strictly private use, in keeping with the style and quality of the respective dwelling houses may be built, constructed, and maintained at the rear of the respective lots upon which such dwelling houses may be erected, but no such garages may be built nearer than 5′ to the rear property line, not nearer than 7′ to the side property lines, and not nearer than 20′ to side street lines, provided that no such garage shall be built, constructed or maintained before the dwelling houses on the property on which such garage is located or erected. Provided, however, that garages of semi-detached dwellings may be erected on the party line between a pair of semi-detached dwellings but all other restrictions as to garages must be complied with. No house or garages erected on said lots shall ever be used for any moral dangerous offensive or injurious purposes or occupation. No for sale sign shall be erected

on any part of the portion of said tract covered by these restrictions and limitations, excepting those erected by its agents or successors as above limited; this restriction shall expire on the first day of January A. D. 1927. No part of the portion of said tract covered by these restrictions and limitations shall ever be sold, conveyed, or leased to, or used or occupied by any person or persons other than members of the Caucasian Race."

4. Defendants erected or caused to be erected a wooden fence along the line dividing the lands of the plaintiffs from those of defendants.

5. The said fence is constructed of wood.

6. The said wooden fence is a violation of the said building restriction in that it is not "a fence of ironwork".

7. The said fence exceeds four feet in height.

8. The said wooden fence is a violation of said building restriction because it exceeds four feet in height.

9. The said fence extends farther to the front of the said premises than 35 feet from the curb line of State Road.

10. The said wooden fence is a violation of said building restriction because it extends farther front than 35 feet from the curb line of State Road.

11. Plaintiffs gave notice to defendants of the existence of the building restrictions on May 11, 1946.

12. The work of erecting the said fence was done on July 27 and July 28, 1946.

13. None of the fences mentioned in the testimony of defendant, Michael J. Morris, is as close to the premises of plaintiffs, as the fence erected by defendants.

14. The building restrictions are still of substantial benefit to the premises of plaintiffs.

### 3. Questions involved

May the owner of one tract of land enjoin the owner of an adjoining tract from erecting a fence in viola-

tion of building restrictions along the common boundary line, even though similar fences may have been erected upon the restricted tract at points remote from plaintiffs' land?

### 4. Discussion

As heretofore stated, plaintiffs are endeavoring to restrain defendants from maintaining a fence, which, it is alleged, constitutes a violation of the building restrictions contained in the deed of conveyance from a common grantor of plaintiffs and defendants.

It appears to us that the restrictive covenant herein is a very clear one. Evidently grantor who imposed the restrictive covenant planned that there should be no fences erected in this residential development except fences of ironwork. And even these fences were confined to the area in rear of the building line and limited not to exceed four feet in height. The purpose was to protect each lot and to secure an attractive residential community by creating an appearance of spaciousness although the lots were small and the houses quite close together.

Defendants, in erecting the fence, the subject of the suit, have violated the restriction in every particular as it concerns fences. The fence erected by defendants is constructed of wood, the restrictions require fences to be of ironwork only; the fence exceeds four feet in height, the restriction provides that it shall be "not over 4' high"; the fence extends to within 10 feet of the curb line of State Road, whereas the restrictions require that it should not "extend further front than the front building line", which in this instance is 35 feet from the curb line. There is no question then that defendants' fence is within the prohibition. The only problem before the court is whether the restriction is now enforcible.

The leading case in this jurisdiction on enforcing building restrictions by an injunction is Hunter v.

Wood, 277 Pa. 150. *There the court enunciated the doctrine that equity will restrain the violation of restrictive covenants as long as they remain of value to the owner of the dominant estate.*

*"Accordingly, notwithstanding a change of the use of the land and buildings in the neighborhood, equity will restrain the violation of the restriction so long as it remains of substantial value to the owner of the dominant estate." Id.* p. 152. (Italics supplied.) See also: Phillips et al. v. Donaldson, 269 Pa. 244, 250; Landell et al. v. Hamilton et al., 175 Pa. 327, 337.

Thus even though there is a change in the condition of the neighborhood, in that there are wooden fences constructed in this community, since plaintiffs will derive very real benefit from the removal of this fence on the premises immediately adjoining their lot, the court must enforce the restriction. The fact that there are some other wooden fences in the neighborhood is absolutely immaterial and irrelevant. It is only when the fences are erected at places in proximity to and visible from plaintiffs' land that any practical benefit accrues to plaintiff in having the building restriction enforced.

In Molony v. Belzer, 14 D. & C. 781, the Montgomery County court held that a covenant prohibiting the erection of fences in a suburban residential development, known as "Merion Park," was of substantial benefit to the owner of the dominant tenement, and an injunction was therefore granted enforcing the restriction.

Defendants contend that there have been so numerous violations of the above building restriction that other purposes intended to be served thereby have been defeated and the development plan has been abandoned. This reasoning is not valid. Merely because some other fences have been erected in violation of the covenant in the neighborhood, license will not result thereby for building a fence on the property adjoining plaintiffs. Plaintiffs have not acquiesced in the viola-

tion of the restriction by defendants, nor have they waived their right to the enforcement of such restriction. On the contrary plaintiffs gave due notice of their intention to enforce the restriction against defendants. Nor have the violations been so widespread as to indicate that the entire restrictive plan of this development has been abandoned.

In Harmon v. Burow, 263 Pa. 188, where there was a restriction requiring the approval of plaintiff before erecting any structure, and two buildings had been constructed without plaintiff's approval, the Supreme Court held that plaintiff had not waived his right to enforce the restriction against defendant, nor were the rights of the other lot owners affected by the fact that plaintiff had not enforced the covenant against two violators thereof.

"The fact that the plaintiff, Harmon, permitted the erection of two other buildings in the plan, the plans of which had not been approved by him, does not constitute a waiver on his part or affect the rights of the other plaintiffs, because it does not appear that these acts materially or to any appreciable degree interfered with the general purpose of the plan and restrictions, nor did the buildings injuriously affect the value of plaintiffs' lots": *Id.* p. 190.

Again, in Bodek v. Sinclair Refining Co., 28 Del. Co. 145, a building restriction was enforced restraining the erection of a gasoline station even though there had been many other violations of the restrictions, including gas stations, on the same tract. The court stated at p. 146, *et seq*:

"If grantor fails to enforce the restriction against one violating grantee, he does not waive the restriction as to others, unless such acts materially interfere with the general purpose of the plan. . . .

"Defendants also urge that the evidence on this subject is sufficient to warrant a finding that conditions have so changed that the purpose of the restrictions

has wholly failed; that most of the owners have been permitted to ignore the conditions of their titles and therefore none are no longer bound. Such reasoning is not valid. If a gas station in one locality be not objected to, license will not result thereby for building a prohibited structure at another place, against the protest of one who has a right to insist on the title restrictions."

From the findings of fact and discussion, we make the following

### 5. Conclusions of law

1. Defendants' premises on the north side of State Road, upon which they have erected the wooden fence, are subject to the restriction that

"No wall or fence of any kind except a fence of ironwork and not over 4' high shall be constructed or maintained on any part of the premises but hedges of living plants may be grown thereon, but must be kept trimmed so that no part thereof shall at any time exceed 6' in height; and no such fence or hedge shall extend further front on said premises than the front building line thereof."

2. The erection and maintenance of the fence complained of constitutes a violation of the building restriction imposed upon defendants' premises.

3. The building restrictions imposed upon the lands of plaintiffs and defendants are still of substantial benefit to the premises of plaintiffs.

4. Notwithstanding changes of the neighborhood conditions equity will restrain the violation of building restrictions so long as they remain of substantial value to the owner of the dominant estate.

5. No individual owner of a lot, part of a tract subject to restrictions, can by his violation of such restriction, deprive other owners of lots in said tract of the right to enforce such restrictions.

6. Where previous violations of a restrictive covenant do not injuriously affect plaintiffs' land plaintiffs

will not, for that reason, be debarred from enforcing the covenant against other violations which, from their proximity, do injuriously affect plaintiffs' land.

7. Plaintiffs are entitled to an observance by defendants of the restriction that

"No . . . fence of any kind except a fence of ironwork and not over 4 feet shall be constructed or maintained on any part of the premises."

8. Plaintiffs are entitled to the relief prayed for in their bill that defendants should be restrained from erecting and maintaining the fence or permitting the same to be erected or to remain on their premises situate on the north side of State Road.

9. Plaintiffs are entitled to the relief prayed for in their bill that a decree be granted directing defendants to remove the fence from their premises situate on the north side of State Road.

10. Defendants should pay the costs of these proceedings.

Therefore we hold that the maintenance of defendants' fence constitutes a violation of the building restrictions imposed upon defendants' premises, and the restrictions are still of value to plaintiff, and the violations of the restrictions have not been so widespread as to indicate that the entire restrictive plan has been abandoned, and plaintiffs themselves have not actually or passively waived or acquiesced in defendants' construction and maintenance of their fence; indeed the court should protect plaintiffs in the enjoyment of their rights secured them by the enforcement of the restrictive covenant and enter a decree requiring the removal of the offending structure.

### 6. *Decree nisi*

And now, to wit, December 29, 1947, the above matter having come on to be heard upon bill, answer, new matter, reply and proofs, it is ordered, adjudged and decreed:

1. That defendants, their agents, servants and employes and each of them, be, and they are hereby restrained from, maintaining a wooden fence along the line separating the lands of defendants from the lands of plaintiffs.

2. That defendants, at their own proper cost, remove or cause to be removed, the wooden fence now standing along the line separating the lands of defendants from the lands of plaintiffs.

3. That defendants pay the costs of these proceedings.

4. The prothonotary be, and he is hereby, directed to notify plaintiffs and defendants, or their respective counsel, of the filing of this decree nisi to which decree nisi exceptions may be filed sec. reg.